WHALON vs. BLACKBURN.

WHALON
v.
BLACKBURN.

Where in an action of trespass for throwing down the fence inclosing the plaintiff's land, it appeared from the evidence that the fence thrown down belonged to the defendant and was wholly upon his land, and that he had given the plaintiff notice of his intention to remove the same, and the jury found for the plaintiff with nominal damages: *Held*, that the court erred in refusing to grant a new trial on the ground that the verdict was not supported by the evidence.

APPEAL from the County Court of *Dane* County.

Action in a justice's court for damages for an alleged trespass of the defendant in throwing down the fence inclosing certain lands of the plaintiff, in consequence of which his crops were injured by cattle. Defense, 1. That the act was done by the defendant "while acting in the capacity of overseer of highways." 2. That the *locus in quo* was the defendant's close and freehold. The cause was duly certified to the circuit court.

The evidence in the circuit court, as set forth in the bill of exceptions, showed that the fence of which a part had been thrown down was wholly upon a strip of land, one rod wide and extending along the east side of the plaintiff's premises, which had been purchased by the defendant for the purpose of dedicating it to the public as a highway; that the fence had been erected by the defendant's grantor, merely for the purpose of protecting his own lands; that the plaintiff had afterwards erected a fence along the northern line of his lands and built it over his east line so as to connect with the fence thrown down; and that the defendant had told the plaintiff he should throw down the fence.

The bill of exceptions states that the evidence contained therein "is substantially all that was offered on the trial, excepting testimony in regard to the highway set forth in the pleadings."

Verdict for the plaintiff for six cents damages. Motion to set aside the verdict and grant a new trial, denied. Judgment for the plaintiff.

*J. C. Hopkins*, and *Welch & Lamb*, for appellant.

*Smith & Keyes*, for respondent, insisted, among other

things, that the bill of exceptions did not profess to contain all the evidence upon the points here in controversy.

June Term, 1861.

WHALON
v.
BLACKBURN.

December 11.

*By the Court*, COLE, J.    It appears to us that the verdict in this case is entirely unsupported by the evidence.    The jury found six cents damages for the respondent.    This was equivalent to saying that the appellant had no right to remove the fence in the manner he did.    We are of the opinion that he had an undoubted right to remove it, and as the bill of exceptions purports to contain all the testimony upon this point, we must hold that this finding is unsupported by the evidence.    There is no ground for saying that it was a partition fence which was removed.    The fence was built by Thomas Urdal, from whom the appellant derived title, of materials furnished by him, on his own land and for the protection of his own crops.    And it appears that all the corners of the fence removed were from a foot and a half to three feet from the line.    It was then the fence of the appellant, and he says that he informed the respondent that he should throw it down.    This it seems to us was all he was under obligation to do, and the respondent might then have taken means to protect his own crops.    He might have insisted upon having a division fence built, but we do not see what right he had to insist upon the appellant's keeping his own fence where it then was, although it protected his, the respondent's, crops.

There is a case strongly analogous to this in 3 Jones's Law R. (N. C.), *State vs. Headrick*, 375.    There the defendant, being the lessee of a field for a term of years, built a fence near the dividing line between his land and the land of the prosecutor, which was then under cultivation, but entirely on his own premises.    The prosecutor, unlawfully and without license, extended his fences over upon the land of the defendant and joined them with the fence of the latter.    And the defendant was indicted under the statute of North Carolina for unlawfully and wilfully removing that part of the prosecutor's fence which was on his own land.    The special verdict of the jury found that the part of the fence for the taking away of which the defendant was indicted, was un-

June Term, 1861.

lawfully and without license put on his land by the prosecutor. And the court said they could not conceive how it could be unlawful for the defendant to remove this obstruction from his own land. In the case at bar the testimony shows that the respondent extended his fence over his line and joined it to the fence thrown down, in order to inclose his land and the land of others, but whether this was done with the consent of the appellant does not appear. However, if the appellant informed the respondent of his intention to throw down the fence which was upon his own ground, and which belonged to him, this was all that it was his duty to do. The respondent then had an opportunity of taking due care and precaution to protect his crops, which might be exposed by the removal. See *Chadwick vs. Trower*, 6 Bing., N. C., 1; *Partridge vs. Scott*, 3 M. & W., 220.

We are aware of the very general application of the wholesome maxim, *sic utere tuo ut alienum non lœdas*—that a man shall so use his own property as not to injure his neighbor, or invade any of his neighbor's legal rights—but we think that maxim has no application here, for the reason that the respondent had no right to insist upon the appellant's keeping the fence upon the land where it then stood. It was a fence standing entirely upon his own land, belonging to him, and which he certainly might remove upon giving the respondent notice of his intention to do so.

As the verdict is entirely unsupported by the evidence, it follows that the circuit court erred in refusing a new trial.

The judgment of the circuit court is therefore reversed, and a new trial ordered.