Van Doran vs. Armstrong, impleaded, etc.

*Reversal of judgment because verdict contrary to the evidence.*

1. Where the court below refused a new trial, this court will not reverse the judgment on the ground that the verdict was contrary to the evidence, if there was testimony which, if believed by the jury, would sustain the verdict.
2. The mere fact that two witnesses had testified in favor of the appellant, and only one in favor of the respondent, is not sufficient reason for setting aside the verdict.

APPEAL from the Circuit Court for *Winnebago* County.

Action against *Walter Guile* as maker, and *Jesse Armstrong* as guarantor, of two promissory notes. Judgment against both defendants; and appeal therefrom by *Armstrong*.

The facts are stated in the opinion.

*Earl P. Finch*, for appellant, contended that "it is the duty of a circuit judge to grant a new trial when the verdict is manifestly against the weight of testimony and the clear justice of the case" (*Van Valkenburg v. Hoskins*, 7 Wis., 497; 1 Gra. & Wat. N. T., 367); and that such was the fact here. He also contended that admitting, against objection, the evidence to show that *Guile* went away after the note was presented to *Armstrong*, was equivalent to informing the jury that the fact was material; that such admission was error by which the appellant *may* have been injured, and is therefore good ground for reversal. *State Bank of Wisconsin v. Dutton*, 11 Wis., 371; *Remington v. Bailey*, 13 id., 332; 6 Hill, 292, and note 6; 1 Bosw., 420; 24 Wend., 421.

*Jackson & Halsey*, for respondent, argued that the legal presumption is that the guaranty was written on the note before the signature of *Armstrong*. *Small v. Sloan*, 1 Bosw., 352. If the witness Boyd were on trial for forgery in writing the guaranty over *Armstrong's* signature, the presumption that he did not do it would be so strong as to require the clearest and most

positive proof to overturn that presumption. And the same rule holds in civil cases. Best on Presumptions, [58]; *Rex v. Inhabitants of Twyning*, 2 B. & Ald., 386. 2. If Boyd's story be true, there was a double wrong. Boyd did wrong in writing the guaranty without the knowledge of *Armstrong*, and *Van Doran* did wrong by appropriating it without the approval of *Armstrong*. And the favored presumption of innocence for all comes in with double force. 1 Phillipps' Ev. (5th Am. Ed.), *644, note; *Bank of U. S. v. Dandridge*, 12 Wheat., 69, 70. Counsel further argued that the contradictions and improbabilities in the testimony for the appellant were such as to justify the jury in believing the clear testimony of the plaintiff; and that this court would not interfere with the verdict, even if it would have found the fact otherwise. *Edmiston v. Garrison*, 18 Wis., 594; *Eaton v. School District*, 23 id., 374; *Hull v. Augustine*, id., 383; *Fredendall v. Taylor*, 26 id., 286.

LYON, J. This action is upon two promissory notes made by the defendant *Guile* to the plaintiff, each of which purports to have been guarantied by the defendant *Armstrong*, as follows: "I hereby, for value received, guaranty the payment of the within note when due. JESSE ARMSTRONG." The complaint is in the usual form, and charges that *Guile* made the notes, and that *Armstrong* guarantied the payment of them as aforesaid. It also alleges that the necessary steps were taken to charge *Armstrong* as an endorser, but this averment was entirely unproved, no evidence having been given under it upon the trial of the action.

The defendant *Guile* did not answer or defend the action. The defendant *Armstrong* interposed an answer denying that he guarantied the payment of the notes, but admitting that he indorsed them in blank.

It appeared on the trial that the plaintiff sold *Guile* a lot of logs, and they went to the office of one L. P. Boyd, an attorney, to have the notes drawn therefor. Boyd drew the notes as

directed, nothing having been said to him about a guaranty, and *Guile* took them and left the office for the purpose of getting *Armstrong's* signature thereto. After obtaining such signature, he delivered them to the plaintiff.

Boyd having removed from the state, his deposition was read in evidence on behalf of the defendant *Armstrong*, wherein he deposed that a short time after *Guile* left his office, the plaintiff returned there with the notes, and each note had the name of *Jesse Armstrong* across the back of it. He further deposes as follows : " *Van Doran* asked me, in effect, if the notes were just as good as though *Armstrong* had signed the notes. I remarked to him, that they would be perfectly good as against *Armstrong* if notified of failure of payment, when due ; or that a guaranty would avoid the necessity of a notice. *Van Doran* asked me if I could fix it. I told him I could write a guaranty, and then he could take it to *Armstrong*, and if satisfactory, all right ; if not, I could draw new notes. He requested me to write the guaranty, and I did so, over *Armstrong's* signature on each note ; he took the notes and left the office, but I don't know what he did with them."

The defendant *Armstrong* testified that he endorsed the notes in blank, and that when he did so the guaranty had not been written upon either note.

On the other hand, the plaintiff testified that no such conversation or transaction as testified to by Boyd occurred between them ; that Boyd did not have the notes in his hands after *Guile* bought them back, and that he had no conversation with Boyd about the notes after that time. It is conceded that the guaranties are in the hand writing of Boyd. The plaintiff had a verdict and judgment, and the defendant *Armstrong* appeals from such judgment.

No exceptions were taken to the charge of the circuit judge to the jury, and but one exception to the admission of evidence during the trial was taken by the defendant. The appellant was recalled by the plaintiff, who offered to prove by him

that *Guile* went away after the note was presented to the witness. (The evidence shows that the plaintiff presented one of the notes to the witness in the post-office after they became due.) This evidence was admitted under the objection and exception of the appellant, and he testified that *Guile* went away the summer before, and after the action was commenced. Earlier in the trial he had testified, on the examination of the plaintiff and without objection, that *Guile* was there when the note was presented to him in the post-office; at least, he testified that he then told the plaintiff so; and that he had left before the trial. In answer to the question: "Is Guile down there at Menasha now?" he answered, "No sir. He went away, and I have tried hard to find him."

Thus it was testified by the appellant, without objection, that *Guile* remained at Menasha until after the notes became due, and left there before the trial, and although all of the evidence on that subject was probably immaterial, we are entirely unable to see what additional mischief could possibly have been done by requiring the appellant to fix the time when he left, a little more definitely; for this is all that the testimony to which exception was taken amounts to.

It should have been stated before, that, after verdict and before judgment, a motion for a new trial, on the grounds that the verdict was against the law and the evidence, was overruled by the circuit court, to which ruling due exception was taken by the appellant.

The only substantial question in the case is, whether the circuit court erred in denying the appellant's motion for a new trial. If there is sufficient evidence to support the verdict, the court did not err in that behalf; but if the evidence is not sufficient to support the verdict, a new trial should have been granted.

The rules which should govern the court in granting or refusing new trials have frequently been stated and enforced by this court.

In *Hooe v. Lockwood*, 3 Chand., 41, it was said: "The motion for a new trial was addressed to the discretion of the judge; and unless there was a gross abuse of that discretion, this court will not reverse the judgment for an alleged error in its exercise."

In *State v. Lamont*, 2 Wis., 437, we find the following: "Motions for new trials are mainly addressed to the discretion of the court in which they are made, and this court will not interfere with the exercise of that discretion except in extreme cases." And again: "There was testimony sufficient on the part of the prosecution (if the jury believed it), to warrant a conviction, and the testimony introduced by the defendant to prove the contract might have been wholly discredited by the jury."

The same rule was re-asserted in *Cook v. Helms*, 5 Wis., 107, and the court refused to reverse a judgment for the reason that the circuit court had overruled a motion for a new trial, although it is there conceded that the weight of evidence was against the verdict.

In *Van Valkenburgh v. Hoskins*, 7 Wis., 496, the rule is thus stated: "The circuit courts have an undoubted right, and it is their duty, to grant new trials where the verdict of a jury is manifestly against the weight of testimony and the clear justice of the case. In passing upon applications for new trials, the law requires the circuit court to exercise an enlightened judgment and sound legal discretion. When this is done, this court will not interfere, as we have repeatedly decided."

In *Lockwood v. Stewart*, 12 Wis., 628, it is said that "it is unnecessary for us to declare what conclusions we should have drawn from the evidence, and it is sufficient to say that it clearly supports the verdict, even if we concede that the weight of evidence was against the finding."

In *Moak v. Bourne*, 13 Wis., 514, which was an action to recover the possession of personal property, a new trial was

granted because it appeared "*beyond any question*" that as to a part of the property in controversy the verdict was wrong.

This court say in *Whalon v. Blackburn*, 14 Wis., 432, "It appears to us that the verdict in this case is entirely unsupported by the evidence." "As the verdict is entirely unsupported by the evidence, it follows that the circuit court erred in refusing a new trial."

In *Edmiston v. Garrison*, 18 Wis., 594, we find the rule thus stated: "Where the evidence is conflicting or doubtful, or where it is not clear to the court that the jury was wrong, the verdict will not be disturbed."

And in *Eaton v. Joint School District*, 23 Wis., 374, the law on this subject seems to have been concentrated by Justice Paine in a single paragraph: "Where there is some evidence upon which the finding of the jury can fairly be supported, this court would not interfere with the action of the court below in refusing a new trial, although we might consider the verdict against the weight of evidence. But where there is no evidence at all to support the verdict, it is the duty of the court to set it aside, and of this court to correct its action, if it refuses."

Applying the rules thus established by this court to this action, the question under consideration may be readily solved. The notes and the guaranties are in the hand-writing of Boyd. The plaintiff testified that the notes were not in the hands of Boyd after they were delivered to plaintiff by *Guile*. The irresistible inference from these facts (if they are facts), is, that Boyd wrote the guaranties before the appellant put his name on the notes. If the jury believed the testimony of the plaintiff, it was sufficient to support a verdict for him. They evidently believed his testimony, for they gave a verdict in his favor. True, there were two witnesses who testified to a state of facts which would have defeated the action, had the jury believed them. But the jury evidently did not believe their statements. We have no rule of law by which we can compel a future jury to disbelieve the statements of the plaintiff and credit those of

Boyd and the appellant. It was not the duty of the jury to *count the witnesses* and render a verdict in accordance with the testimony of a majority of them, but it was their duty to *weigh the testimony* and render a verdict in accordance with the preponderance of the evidence. I think no case can be found where a verdict has been set aside merely because a majority of the witnesses have testified in favor of the losing party.

It is said that the reasonable probabilities of the case are with the appellant. Some of them doubtless are. It is reasonably probable that Boyd did not write the guaranties on the notes without being requested to do so, and it is conceded that he was not requested to do so before the notes were taken to the appellant. But on the other hand, it is also reasonably probable that if the plaintiff was told by Boyd that it was necessary either to have the consent of the appellant to the guaranties, or to have new notes executed, he would have made some little effort to obtain such consent or to get new notes. So we see that there are reasonable probabilities in the case in favor of both parties.

Knowing nothing of either of the parties, or of Boyd, and not having seen the parties upon the stand or heard their testimony, it may seem to us that the preponderance of evidence is with the appellant. But the jury, who doubtless knew the witnesses, and who saw the parties upon the stand and heard them testify, had a better opportunity to judge which way the evidence preponderated. The law does not permit us to say that they judged erroneously.

The judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.