Hutchinson vs. The Chicago & Northwestern Railway Company.

---

HUTCHINSON vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*(1) Res Adjudicatæ. (2) Cause of action: Mutual breaches of contract. (3) Pleading: General denial.*

TITLE TO LAND: EVIDENCE. *(4) Title by adverse possession. (5) Effect of deed given* pendente lite, *to correct error in former deed.*

SPECIAL VERDICT. *(6) General rule as to special verdicts. (7, 8) When defects therein not fatal. (9) Discretion of court as to their form.*

EVIDENCE: INSTRUCTIONS: DAMAGES. *(10-12) Damages to property from location of railroad: Increased liability to fire, etc. Evidence and instructions in such cases.*

REVERSAL OF JUDGMENT: *(7, 8) For defects in special verdict. (13) For erroneous instructions. (14) For refusal of correct instruction. (15) Because verdict against evidence.*

Hutchinson vs. The Chicago & Northwestern Railway Company.

1. It is *res adjudicata* by the former decision in this case (37 Wis., 582), that the action is upon the instrument set out in the complaint (the pleadings being unchanged); and also that the defendant, by accepting and recording such instrument and by entering upon and constructing its railway across plaintiff's premises by virtue thereof, became bound by its provisions, and is liable for any breach thereof; and that the measure of plaintiff's damages for such breach is the amount of the depreciation caused thereby in the value of the premises.

2. If plaintiff covenanted to give defendant a right of way over a larger amount of land than the former owned, he may be liable to defendant in damages for a breach of such contract, but that will not defeat his right of action for defendant's breach of the contract on its part.

3. In an action for damages to real property caused by defendant's breach of contract in the manner of locating and building its road thereon, where the complaint alleges plaintiff's title in fee simple, a *general denial* puts such title in issue.

4. Actual adverse possession of the premises, by plaintiff alone or with his cotenant, for more than ten years, under claim of title exclusive of any other right, founded upon a deed which purported to convey to such occupant an undivided half of the premises, *held* sufficient to establish his title to such undivided half.

5. Plaintiff put in evidence a deed from his cotenant, executed before the contract here sued upon, purporting to convey to him an undivided half of certain other premises, with proof that the instrument was intended to convey such cotenant's undivided half of the premises here in question; and also a deed executed by the same grantor *since* the commencement of this action, evidently designed to correct the error in his former conveyance, and purporting to convey his undivided half of the premises in dispute. *Held*, that the latter deed was properly admitted in evidence; that it cures the defect in the former deed; and that plaintiff's rights are the same as though such former deed had been correctly drawn.

6. In the absence of a general verdict, the special verdicts should include all the material issues; and, as a general rule, if they do not, a judgment based upon them will be reversed.

7. In this action for breach of defendant's contract in constructing its track nearer than seven rods to the east line of plaintiff's grist mill, and so that it injured plaintiff's mill dam, the jury found that the defendant had constructed its track in the manner alleged, and that plaintiff's mill property was thereby depreciated in value to a certain amount; but did not find expressly that plaintiff owned the property. The question submitted to the jury related only to plaintiff's property. *Held*, that the omission could not prejudice the defendant, and is not ground for reversing a judgment against it.

Hutchinson vs. The Chicago & Northwestern Railway Company.

8. A party against whom judgment is rendered on a special verdict, cannot be injured by the failure of the jury to determine one of the issues, where the undisputed evidence settles such issue against him.

9. Where the damages are to be assessed in a special verdict, the court has discretion to determine how minutely they shall be itemized; and in general its rulings on that subject cannot be reviewed on appeal.

10. Witnesses who did not estimate the plaintiff's damages from defendant's breach of contract in locating its road, were permitted to testify that plaintiff's mill caught fire from sparks emitted by a locomotive passing on said road. *Held*, that the evidence was admissible to confirm that of other witnesses who estimated the depreciation of the property by reason of the construction of the road, and specified the danger of fire as an element of such depreciation.

11. Where a witness's estimate of the depreciation of property is based upon remote or conjectural sources of injury, the remedy is for the court to instruct the jury that these are not proper grounds upon which to base their assessment of damages.

12. The court charged that " in estimating damages in actions of this nature, such consequential, remote and contingent sources of injury as the frightening of horses, danger from fire, and the like, are in themselves too remote for damages; *but if these things depreciate the value of the property, the depreciated value may be assessed.*" *Held*, that the last part of the instruction is erroneous.

13. While it is a general rule that erroneous instructions are not corrected by giving, for the other party, instructions explanatory of, inconsistent with, or contradictory to, those first given, still, where, in the general charge and in giving instructions proposed by one of the parties, the court has repeatedly and clearly corrected an inadvertent error in giving an instruction asked by the other party, so that this court can say (as in this case), from the whole charge and the verdict, that the jury could not have been misled by such error, judgment will not be reversed therefor.

14. It is not error to refuse a correct instruction, where substantially the same proposition has already been given in other words.

15. A judgment will not be reversed on the ground that the verdict is contrary to evidence, when there is testimony which, if believed by the jury, will sustain the verdict.

APPEAL from the Circuit Court for *Juneau* County.

This action has been twice tried, and each trial resulted in a judgment for the plaintiff. The first judgment was reversed by this court on appeal. The report of the case upon that appeal (37 Wis., 582) contains a sufficient statement of the na-

ture of the action, the contract or instrument upon which it was founded, and the pleadings, together with a plat of the premises affected by the action. This present appeal was taken by the defendant from the second judgment.

The record in the last trial is sufficiently stated in the opinion.

A brief was filed for the appellant by *Sloan, Stevens & Morris*, and the cause was argued orally by *Mr. Sloan*. They contended, among other things, 1. That it was error to allow plaintiff to recover full damages for injuries done to the whole property, because defendant would still be liable to the plaintiff's brother James for injuries done to his undivided half. It is claimed that James intended, by his deed of 1865, to convey such undivided half; but the deed does not disclose any such intention; the fact, if true, must be shown *aliunde;* and the question, so materially affecting the interest of James, cannot properly be determined in an action in which it is not sought to reform the defective deed, and to which James is not a party. 2. The legal effect of the agreement between the parties was simply this: that if defendant should construct its road across plaintiff's premises, at least seven rods from the grist mill, and so as not to injure the dam, it should be entitled on demand to a deed of a strip of plaintiff's said land, one hundred feet wide. The delivery and acceptance of such an agreement created no obligation on either side; and the recording of it operated simply as notice that defendant might, by performing certain acts, obtain certain rights on plaintiff's premises. Compliance with the conditions precedent, and the demand of the deed by defendant, could alone make this an absolute contract. *Dickinson v. Dodds*, L. R., 2 Ch. Div., 463; *Cheney v. Cook*, 7 Wis., 413. Defendant obviously might comply with the provisos of the contract and obtain the right of way for nothing, or disregard the provisos and obtain the right of way in the usual mode, by purchase or condemnation. *Eno v. Woodworth*, 4 N. Y., 249. 3. The

verdict is wholly unsupported by the evidence, so far as it awards plaintiff more than $620 damages for injuries to his mill dam; that being the highest sum which any of his own witnesses testified it would cost to repair all injury caused to the dam by the construction of the road. It is quite apparrent that although the judge instructed them that plaintiff still owned the present dam and had the right to use and repair it, the jury disregarded the charge in this respect, and gave plaintiff the cost of building a new dam. 4. The award of $2,100, for injuries to the plaintiff's feed mill, is against the law and evidence. Danger from fire and of horses being frightened were the only grounds upon which depreciation in the value of the feed mill could be predicated. To sustain this part of the verdict would be equivalent to holding that these are independent grounds for awarding damages. 5. The court erred in charging that the depreciation in value caused by the frightening of horses, danger from fire and the like, might be considered in assessing damages. *Robbins v. R. R. Co.*, 6 Wis., 636; *Price v. Railway Co.*, 27 id., 98; *Stadler v. Milwaukee*, 34 id., 98; *Hutchinson v. Railway Co.*, 37 id., 592–3, 610; *S. & E. R. R. Co. v. Hummell*, 27 Pa. St., 99; *T. & B. R. R. Co. v. N. T. Co.*, 16 Barb., 103–6; *C. & N. F. R. R. Co. v. Payne*, id., 273; *A. N. R. R. Co. v. Lansing*, id., 68; *In re U. V. & J. R'y Co.*, 53 id., 457; *Presbrey v. Railway Co.*, 103 Mass., 1, 6; *Wilmington etc. R. R. Co. v. Stauffer*, 60 Pa. St., 374. 6. The court erred in striking out several questions from the special verdict prepared by the defendant. If those questions had been submitted, the court, aided by the facts so found, could have entered the judgment which the law authorizes, excluding all damages resulting from contingent, speculative and remote causes, which it was unable to do upon the verdict as rendered. The statute gives a party requesting it an absolute right to a special verdict; and defines it as a verdict " by which the jury finds the *facts only*,

leaving the judgment to the court " (ch. 21 of 1875); and such a verdict must decide all questions of fact not admitted by the pleadings. 2 Till. & Sheav. Pr., 494, and cases there cited.

*J. W. Lusk*, for the respondent, argued the following among other points: 1. Plaintiff's title was sufficiently shown. Each deed which contains an error in description, expressly refers to the *mill property;* and the deed from James Hutchinson to the plaintiff particularly refers to all the mill property of J. & J. Hutchinson. Parol testimony was admissible to show what mill property was intended. The intent, when apparent, and not repugnant to any rule of law, will control technical terms. *Jackson v. Beach*, 1 Johns. Cas., 400; *Jackson v. Tibbits*, 9 Cow., 249; *Fish v. Hubbard's Adm'rs*, 21 Wend., 653; *Spiller v. Scribner*, 36 Vt., 245; *Gove v. White*, 20 Wis., 425; *Du Pont v. Davis*, 30 id., 170. If the description in a deed is uncertain, reference may be had to prior deeds conveying the same land. *Bowman v. Wettig*, 39 Ill, 416. 2. The testimony of Richard Thyle and E. Thyle was admissible to show the reason of the depreciation of the property in value, as a means by which the jury could estimate " the value of the evidence of depreciated value," under proper instructions. 37 Wis., 610. 3. The statute which provides that "in all civil cases the *court shall*, at the request of any party, *direct* the jury to find a special verdict " (sec. 1, ch. 21 of 1875), clearly contemplates that the court shall direct the form and substance of such special verdict. And the court may properly refuse (as in this case) to ask the jury to assess the damages resulting from particular causes which the jury cannot consider at all as grounds of damage, or as to which there is no evidence before it. 4. The third instruction given at plaintiff's request is in exact accordance with the former opinion of this court in the present case, and with its opinion in *Snyder v. R. R. Co.*, 25 Wis., 60. In the latter case the court says (p. 69): " It matters not what *causes* the depreciation in value, whether exposure to fire, annoyance from trains, or danger to person

and property; the real question is, whether, in consequence of the railroad, the property is diminished in value."

LYON, J.  I. On the former appeal (37 Wis., 582), it was determined, on the pleadings, that the action is on the instrument set out in the complaint and also in the report of the case on that appeal; that the defendant company, by accepting and recording such instrument and by entering upon and constructing its railway across the plaintiff's premises under and by virtue of it, became bound by its provisions; and hence, that if the defendant constructed its railway on such premises nearer than seven rods from the east line of the plaintiff's grist mill, or so as to interfere with or injure his mill dam, that is a breach of the provisions of the instrument, for which the plaintiff may maintain this action.  It was also there determined, that if the plaintiff is entitled to recover, the measure of his damages is the amount of depreciation in value of his property by reason of the defendant's breach of contract. We think the former appeal fairly presented all of the above propositions for determination; and hence we cannot agree with the learned counsel for the defendant, when they claim that the proposition that the defendant was bound by the terms and provisions of the above instrument, is a mere *obiter dictum*.  The rule of damages at least, and perhaps the right to maintain the action, depend upon it.

The pleadings are unchanged, and the above propositions are now *res adjudicatæ* in the case, binding upon the parties and the court.  *Du Pont v. Davis*, 35 Wis., 631, and cases cited; *Lathrop v. Knapp*, 37 id., 307.  It is not improper to say, however, that the case was very fully considered on the former appeal, and the argument of the learned counsel for the defendant has failed to convince us that it was not decided correctly.

II. The complaint alleges that the plaintiff is the owner in fee simple of the lands described in the contract or instrument

upon which the action was brought; and the answer contains a general denial, without any admission of plaintiff's title to such lands. Hence the plaintiff's title is distinctly put in issue by the pleadings, and it was incumbent on him to establish it by competent evidence.

On the first trial, the plaintiff seems to have proved his title to the satisfaction of the defendant's counsel, and no question was made in respect to it on the former appeal.

On the last trial, however, the plaintiff's title to the lands described in such instrument was vigorously contested; and it is here contended on behalf of the defendant, that he failed to show his ownership of such lands, or, at most, of more than an undivided half of a small portion thereof.

On the other hand it is claimed that the evidence establishes the plaintiff's title to seven acres of the land described in the contract, on which are located the mills, dam and water-power of the plaintiff, and across which the defendant has constructed its railway.

The southwest quarter of the southwest quarter of sec. 33, town 15 N., range 2 E., was entered by one Dow in 1855, who in the same year conveyed to James Hutchinson (a brother of the plaintiff) a piece in the northeast corner thereof, 58 rods long east and west, by 27 rods wide north and south. This is called the ten-acre tract. In 1856, James Hutchinson conveyed the same tract (with other land) to one Lyon. During the same year, Lyon and Hutchinson joined in a conveyance of a tract 58 by 27 rods on sec. 33 to one Brintnall, but the same is located upon the *southeast* quarter of the southwest quarter of sec. 33. It is claimed that this deed was intended to convey the same ten-acre tract which was conveyed by Dow to Hutchinson in 1855, and such is probably the fact.

In October, 1858, Brintnall executed to James Hutchinson and one Medbury a conveyance of seven acres, part and parcel of such ten-acre tract. The three acres of that tract not included in such conveyance consists of a strip six rods wide on

the whole north side, and a piece four rods by eight rods in the southwest corner of such tract. The deed of Brintnall also expressly conveyed the same mill and water-power on said land, with the right to maintain a dam thereon of a specified height, and the right of flowage.

In January, 1859, Medbury conveyed the undivided half of the seven acres and of the mills, etc., to his cotenant James Hutchinson, who, two months later, conveyed an undivided half of the same premises and property to the plaintiff. Thereupon the plaintiff and his brother James Hutchinson entered into the actual possession and occupancy of the mills and mill power mentioned in such deeds, and carried on the milling business thereon from 1859 to 1865, when the same passed into and has ever since been in the sole and actual possession of the plaintiff.

In 1865, James Hutchinson executed a deed to the plaintiff, in and by which he doubtless attempted to convey to the plaintiff his remaining undivided half of the same seven acres and mill property; but by mistake in the description the seven acres is located in the southwest quarter of the *southeast* quarter of sec. 33, instead of the southwest quarter of the *southwest* quarter of that section.

In 1874, and after this action was commenced, James Hutchinson corrected the error in the deed of 1865, by executing another deed to the plaintiff of an undivided half of the seven acres and the mill property described in the above conveyances of 1858 and 1859.

All of the above mentioned deeds, or the records thereof, were read in evidence on the trial, against the objections of the defendant.

From the foregoing statement, it appears that the record title to the ten-acre tract remained in Lyon by virtue of the deed executed by James Hutchinson to him in 1856. But the conveyances of 1858 and 1859 from Brintnall to James Hutchinson and Medbury, from the latter to James Hutchinson, and

from James Hutchinson to the plaintiff, of the seven acres (part and parcel of the ten-acre tract), although they failed to convey the fee, were sufficient to bring an adverse possession of the seven acres under such deeds within the ten years limitation prescribed in sec. 6, ch. 138, R. S.  This will not be questioned.

The plaintiff having been in the actual adverse occupancy and possession of the premises, either alone or with his co-tenant, more than ten years before this action was commenced, under claim of title exclusive of any other right, founding such claim upon a deed which purported to convey to him an undivided half thereof, his title to such undivided half cannot be successfully assailed.

Had James Hutchinson succeeded in his attempt, made in 1865, to convey to the plaintiff the other undivided half of the premises, it is clear that the plaintiff's title to the whole seven acres would have been impregnable when this action was commenced.  Such would necessarily be the result of the actual possession and occupancy of the property under claim and color of title, by James and the plaintiff from 1859 to 1865, and by the plaintiff continuously from that time to the present, or to the commencement of the action.

But the conveyance of 1865, executed by James to the plaintiff, does not include the seven acres, and hence is not such an instrument as is mentioned in sec. 6, *supra.*  *McEvoy v. Lloyd*, 31 Wis., 142.

The only instrument read in evidence by which it was attempted to cure the error or defect in the conveyance executed by James Hutchinson to the plaintiff in 1865, is the conveyance by the former to the latter of an undivided half of the seven acres and mill property, executed *pendente lite* in 1874; and the plaintiff's title to such undivided half depends upon that conveyance.

Had an action been brought in equity after the commencement of this action, to reform the deed of 1865, and had a

judgment reforming the same been obtained before the trial of this action, we cannot doubt that the reformed deed would have taken effect by relation as of the time the erroneous deed was executed, and that such deed and the judgment reforming it, if put in evidence, would have completed the proofs of plaintiff's title to the whole seven acres. Neither can we doubt that the evidence in the record before us is amply sufficient to entitle the plaintiff to have such deed reformed. Indeed such evidence is not disputed.

But, instead of resorting to a court of equity for that purpose, the easier and more speedy process of accomplishing the same result was resorted to by the plaintiff, by procuring a corrected conveyance from his grantor. We see no valid reason why the latter conveyance should not have the same effect as though the correction had been made by the judgment of a court of equity instead of the voluntary act of the parties interested.

When this action was tried, the plaintiff was the sole owner of the mill property, and no other person could possibly sustain a claim for any portion of the damages resulting from the breach by the defendant of the provisions of the contract upon which the action is brought. Why then should he not recover such damages as he has proved? We think that he should.

The plaintiff purchased all of the interest of James Hutchinson in the property in question, in 1865. The latter intended to convey the same to the plaintiff, and doubtless both supposed he had done so. James surrendered the possession of the property to the plaintiff, and, when the defect in this conveyance was discovered, he executed to the plaintiff a new and corrected conveyance of the property. It seems very clear to our minds that the deed of 1874 was properly admitted in evidence; that it cures the defect in the deed of 1865; and that the rights of the plaintiff are the same as though the former deed had been correctly drawn in the first instance.

The uncontroverted evidence also satisfactorily proves that the mills and dam of the plaintiff are located upon, and that the defendant constructed its railway across, said seven acres.

III. No general verdict was returned by the jury, but they found specially on certain questions of fact submitted to them by the court. There was no express finding upon the question of title, the same not having been submitted to the jury. In the absence of a general verdict, the special findings should include all of the material issues made by the pleadings. As a general rule, if they do not, a judgment based upon them will be reversed. *Heeron v. Beckwith*, 1 Wis., 17, and cases cited in Vilas and Bryant's notes (new ed., p. 32); *Eldred v. The Oconto Co.*, 33 id., 133; *Young v. Lego*, 38 id., 206. We must determine, therefore, whether the present case is within that rule.

*Eldred v. The Oconto Co.* is a case in point. On the motion for a rehearing, DIXON, C. J., was of the opinion (contrary to the former ruling), that the verdict was special, and not general. The action was replevin, and the jury found that the plaintiff was the owner and lawfully entitled to the possession of the property in controversy, and assessed the value of the property and the plaintiff's damages for the unlawful detention thereof. There was no express finding that the defendant unlawfully detained the property from the plaintiff. It was held by the chief justice (and the other members of the court agreed with him), that the jury could not have assessed damages to the plaintiff for the detention, unless they found the property was unlawfully detained by the defendant, and it was further held that, although the verdict may have been defective in that it contained no express finding of the unlawful detention, yet the defendant was not injured thereby, because it was fairly implied therefrom that the jury found such detention; and hence that the defect should be disregarded. R. S., ch. 125, sec. 40.

In the present case, the jury found that the defendant built

its railway track nearer than seven rods to the east line of the plaintiff's grist mill, and so that the same interfered with or injured the plaintiff's mill dam, and that the plaintiff's mill property was thereby depreciated in value $4,100. It seems apparent that the jury must necessarily have found that the plaintiff was the owner of the property; for the questions submitted to them related to the property of the plaintiff and none other. If so, the failure of the jury to find expressly that the plaintiff owned the mill property could not injure or prejudice the defendant, and hence is not ground for a reversal of the judgment.

There is another view of the subject which leads to the same result. We have already held that the uncontradicted evidence proves the plaintiff's title to the seven acres, being the mill property. Had the jury been required to find on that subject, it would have been the duty of the learned circuit judge to instruct them to find the title in the plaintiff. We do not perceive how a party against whom judgment has been rendered on a special verdict can possibly be injured by the failure of the jury to determine one of the issues, when the undisputed evidence settles such issue against him. In such case a finding upon the issue is matter of form rather than substance; for certainly there can be no substantial difference between directing the jury to find that the title was in the plaintiff, and then giving judgment for him founded on such finding, and rendering the same judgment without such finding.

We conclude, therefore, that the failure of the jury to pass upon the title does not invalidate the judgment.

Before leaving this branch of the case, it may be observed that the case was given to the jury on the hypothesis that the plaintiff was the owner of the mill property. Numerous instructions were asked, and several specific questions to be submitted to the jury were proposed, on behalf of the defendant; but in none of these was the question of title raised or alluded

to, and the subject was not mentioned by the circuit judge in his charge to the jury. It seems to have been conceded that if the several conveyances, or the records thereof, read in evidence, were properly admitted, they established the plaintiff's title.

The specific objection that the special verdict contains no finding on the question of title, was not urged in the argument of counsel, although the point was made with reference to another matter that such verdict does not determine all of the questions in issue. Yet the question of the sufficiency of the verdict in respect to title is in the case, and it seems necessary that it should be determined.

IV. On the trial, two witnesses, Richard Thyle and E. Thyle, called by the plaintiff, were permitted to give testimony tending to show that on one occasion the plaintiff's feed mill caught fire from sparks emitted by a passing locomotive. The admission of this testimony is assigned as error. Had these witnesses also estimated the plaintiff's damages, and then had they stated the fact of the fire as an element of damages, the testimony would have been admissible under the rule of *Snyder v. R. R. Co.*, 25 Wis., 60, which was approved and applied to this case on the former appeal. For if a witness may state that the danger of fire is an element in his estimate of damages, most assuredly he may state the fact that a fire has actually occurred. Although the witnesses above named made no estimate of damages, yet we are inclined to think their testimony was admissible to verify that of other witnesses who estimated the depreciation of plaintiff's property by reason of the construction of defendant's railway, and specified the danger by fire as an element of such depreciation.

Where such estimates are based upon remote or conjectural sources of injury, the remedy is for the court to instruct the jury that these are not proper grounds upon which to base their assessment of damages.

V. We are now to consider the instructions given to the

jury, and the proposed instructions which the court refused to give. These are quite voluminous, occupying nearly seventeen pages of the printed case, and they relate mainly to the question of damages. It is unnecessary to state them all in detail. Only those will be inserted here by the giving or refusing of which it is claimed the court erred. As to the other instructions, it is sufficient to say that they contain a correct statement of the rule of damages established by this court on the former appeal.

The learned circuit judge opened his charge to the jury by giving four instructions proposed on behalf of the plaintiff, one of which is in these words: "In estimating damages in actions of this nature, such consequential, remote and contingent sources of injury as the frightening of horses, danger from fire and the like, are in themselves too remote for damages; *but if these things depreciate the value of the property, the depreciated value may be assessed.*" The last part of this instruction is clearly erroneous. For it is as well settled as any legal proposition can be by judicial determination, that in actions like this damages cannot properly be assessed for depreciation in the value of property caused by the danger that fire may be communicated thereto from passing locomotives, or horses frightened by passing trains. The loss by depreciation from such remote and uncertain causes must be borne by the owner of the property. It was so held on the former appeal. The chief justice there said: "Evidence of remote and conjectural causes of depreciation should not be submitted to the jury as a basis for their assessment of damages."

This error was doubtless inadvertently committed, yet it is fatal to the judgment unless we can say from the whole charge and the verdict that the jury could not have been misled by it, and hence, that it was not injurious to the defendant.

The court gave ten instructions proposed on behalf of the defendant, in each of which the rule in respect to damages or depreciation in value caused by the danger of fire or the

frightening of horses, was clearly and correctly stated. The jury were thereby instructed, in a variety of forms, that they must not assess any damages for depreciation resulting from such remote and conjectural causes.

In his general charge, the judge said to the jury: " In assessing or finding the amount of the damage or depreciation, you will not take into consideration as a basis of the damages or as a reason in your verdict for the depreciation of the property, the evidence of witnesses as to the risk of fire from engines, frightening of horses by passing trains, or a probable loss of business by reason of teams being frightened when at the mills; such things may or may not happen, and, being contingent, afford no basis or ground to award damages for, and you should exclude all such evidence from your consideration of plaintiff's damages or right to recover for the depreciation of property. They do not make the damages sought to be ascertained and recovered." And again: " You must examine the testimony of the several witnesses, and see upon what theory they base or fix their estimate of damages; and if you find it rests on speculative, remote or contingent facts, you should discard it as proof of damages."

Thus it will be seen that after the erroneous instruction had been given, the judge laid down the correct rule of damages over and over again, in terms so clear and explicit that no person of ordinary understanding could possibly misconceive his meaning. It would be an imputation against the good sense of the jurors to hold that there is any reasonable ground to believe or suspect that they understood from the charge that they were to assess damages for depreciation caused by the possibility or probability that passing locomotives might set the plaintiff's mills on fire, or that passing trains might frighten horses driven to his mills.

Furthermore, the fact has some significance, that the jury assessed the damages at one thousand dollars less than they were assessed on the first trial, although the testimony on both

trials was substantially the same. It is not easy to account for this decrease, except upon the theory that the last jury adopted the correct rule of damages, while the first based their verdict upon an erroneous rule.

We must presume that the jurors were gentlemen of ordinary intelligence; and if they were, it is incredible that they were misled by the erroneous instruction read to them at the commencement of the charge and so fully and unmistakably corrected afterwards. Because the error was thus corrected, and because we are satisfied that it did not injure the defendant, we must hold that it is not within the rule of the case cited by counsel for the defendant, that erroneous instructions are not corrected by giving for the other party instructions explanatory of, inconsistent with, or contradictory to, those first given.

The court refused to give the following instruction asked for on behalf of the defendant: "The plaintiff is only entitled to recover for injury to the dam such damage as he has sustained on account of the facilities for repairing the dam being lessened by the construction of the said road; and the jury should only find such amount of damages as will restore facilities for repairing the dam equal to those which would exist if the railroad had not been built." This instruction confines the damages to the dam to the lessened facilities for repairing it, and was properly refused, for the reason that there is testimony in the case tending to prove that the dam is endangered by the piling driven into it in the construction of the railway. The testimony of George Willards is to that effect.

The court also refused to give the following instruction asked for defendant: "The condition in the contract that says, 'Provided, said railroad track shall not interfere with or injure the structure which now sustains my mill dam,' amounts to a reservation to the plaintiff of the right or privilege to go on the dam to repair it; and therefore estimates made by the witnesses based upon the idea or statement that plaintiff

would have no right to go on there to repair, or that the railroad company do have or were to have an absolute control or right to the dam and the whole of it absolutely, and that they could prevent plaintiff entering upon it to repair or strengthen the dam or its structure, are not proper to be considered as bearing upon the question of damages in this case, as, under the proper construction of the conditions of this contract, the plaintiff intended and must be held to have reserved at least the right of entry upon any of the lands included in the contract, for purposes connected with the dam and its maintenance in a proper condition."

At the request of the defendant's counsel, the court gave the following instruction: " Under the said contract the plaintiff is entitled to exercise all the rights and privileges in repairing, keeping up and maintaining his dam, which he possessed before the railroad was built, and the plaintiff's rights and privileges in that respect are not abridged by the building of the railroad, except so far as the construction of the railroad may have in fact interfered with said rights and privileges." We think these two last instructions are substantially alike; and, one of them having been given, the refusal to give the other is not just ground for complaint.

VI. The answers returned by the jury to certain questions submitted to them by request of the respective counsel, constitute the verdict. Such questions and answers are as follows:

" *Special Verdict asked by Plaintiff.*

1st. Did the defendant build its track nearer than seven rods to the east line of the plaintiff's grist mill?

Answer. Yes.

2d. Did the defendant build its track so that the same interfered with or injured the structure which sustained the plaintiff's dam?

Answer. Yes.

3d. If both or either of the above questions are answered in

the affirmative, is the plaintiff's mill property thereby depreciated in value?

Answer. Yes.

4th. If the last question is answered in the affirmative, state the amount of depreciation in value of the plaintiff's mill property.

Answer. $4,100.

5th. What amount of the above depreciation or damage is caused by defendant's building its track so as to interfere with or injure the structure of the plaintiff's dam?

Answer. $2,000.

6th. What amount of the whole depreciation is caused by defendant's building its track within seven rods of the plaintiff's mill, and deducting the amount of the damage caused by interfering with the dam?

Answer. $2,100.

*Special Verdict asked by the Defendant, as modified by the Court.*

1st. Has the construction of the railroad interfered with or injured the plaintiff's dam by lessening the facilities for repairing the dam?

Answer. Yes.

If yea, you will then find what amount of damages the plaintiff has sustained therefrom.

Answer. The jury find $2,000.

2d. What other damage, if any, has the plaintiff sustained by the construction of the road?

If you find any other damages, state how it is sustained, and the amount in separate items, if practicable.

Answer. The jury find it is not practicable to itemize such damages. The jury find $2,100.

Upon these facts the jury respectfully leave the judgment to the court."

When the verdict was returned, counsel for defendant moved the court again to submit the last question to them for

a more full and explicit answer; but the court denied the motion. The ruling is assigned as error.

The court necessarily has a discretion as regards the form and scope of questions to be submitted to the jury. Where an assessment of damages is to be made, and the damages are made up of several elements, it is for the court to say how minutely the damages must be itemized; and, in general, the rulings in that behalf cannot be reviewed on appeal. For example, in an action for personal injuries it would scarcely be error should the court refuse to require the jury to specify in their assessment of damages, separately, the sum allowed for loss of time, for bodily pain, for mental suffering, and for probable permanent injury, although each of these is, or may be, an element or ground of damages. So in this case, we think the court did not abuse the discretion vested in it, by refusing to require the jury to specify in their verdict every particular in which the plaintiff had been injured, and to assess damages separately for each item of injury. The jury found that it was not practicable thus to itemize the damages, and probably the circuit court agreed with the jury. At any rate we cannot disturb the ruling in that behalf.

Counsel for the defendant asked the court to instruct the jury to find specially whether the plaintiff had sustained damages on account of the danger to the mills by fire, or that horses coming to the mills or used in repairing the dam would be frightened, by reason of the present location of the defendant's railway, and if so the amount of damage resulting therefrom to each mill and the dam. Also, whether the rate of insurance on the mills was increased by the danger of fire, and if so, how much. Several questions on these subjects were proposed. The court refused to submit such questions to the jury.

We think this ruling was correct. As before stated, the jury were instructed that they could not take into consideration as a basis of damages for the depreciation of the proper-

ty the testimony as to the risk of fire from engines or the frightening of teams at the mills by passing trains; and it would have been idle and inconsistent to require the jury to make a specific assessment of damages which the court properly ruled the plaintiff could not recover.

Had an assessment of such damages been made, it would not necessarily follow that they were included in the assessment upon which the judgment is predicated.

VII. The only remaining question to be determined is, whether there is testimony to support the assessment of damages. If there is, although we might think that the assessment is not sustained by a preponderance of the evidence, we cannot disturb the judgment. On this question it is sufficient to say that several witnesses estimated the plaintiff's damages over and above what he would have sustained had the railway been constructed seven rods east of his grist mill, at a larger sum than the plaintiff recovered.

It is true that on the cross-examination of some of these witnesses, but not all of them, it appeared that their estimates included damages for danger from fire and the frightening of horses. However, one witness, William McClurg, estimated the plaintiff's damages to his mills and mill property over and above what the same would have been were the railway constructed seven rods east of the east line of his mill, and so as not to interfere with or injure his dam, at from $5,000 to $6,000. This witness did not testify that he included in such estimate anything for danger from fire or the frightening of horses; and his testimony, standing alone, would support a judgment for aggregate damages even larger than the plaintiff recovered. It was for the jury to determine whether his testimony was overcome by the other proofs in the case; and if they erred in their determination, the appellate court is powerless to correct the error.

It is claimed that there is no evidence to sustain the finding that the plaintiff's mill property was depreciated in value

$2,000 by the construction of the railway so that it interferes with or injures his dam. But the learned counsel must have overlooked the testimony of Benjamin Boorman, who estimated the value of the dam without the railway over it at $3,000, and with the railway there at only $1,000. The testimony of the plaintiff on his cross-examination also tends to sustain the estimate of Boorman.

Any further statement of the testimony on the subject of damages would be unprofitable. Enough of it has been stated to show that the jury had some testimony before them to sustain their assessment of damages. A motion for a new trial based upon the alleged ground (among others) that the verdict is not supported by the evidence, was denied by the circuit court. The case is within the rule so often asserted, that this court cannot reverse the judgment on the ground that the verdict is contrary to evidence, when there is testimony which, if believed by the jury, will sustain the verdict. See *Van Doran v. Armstrong*, 28 Wis., 236, and cases cited.

Our conclusion upon the whole case is, that the judgment of the circuit court should be affirmed.

*By the Court.* — Judgment affirmed.

A motion for a rehearing was denied at the January term, 1877.

LYON, J. In their argument in support of the motion for a rehearing of this cause, the learned counsel for the appellant stoutly assert that certain statements of fact contained in the opinion filed in the cause on the present appeal are not sustained by the evidence; and they vigorously deny the soundness of many — perhaps most — of the propositions of law there laid down. The earnestness of the argument, the apparent strength of the convictions of the learned counsel that their views are correct, and the assertion, often repeated, that the judgment of the circuit court is most op-

pressive and unjust to the appellant, has prompted us carefully to review the grounds of our decision. The result of our further deliberations is to strengthen our conviction that the case was correctly decided.

That the judgment of this court on the first appeal is *res adjudicata* as to all questions necessarily involved therein, and that the questions which we held in the opinion on this appeal were finally disposed of by that judgment, were so involved and disposed of, we think is true. We also think that no substantial error has been committed in the statement of facts upon which that decision is based.

We cannot go over the whole ground of the case again, but will refer briefly to a few points made in the argument, leaving our judgment to rest mainly upon the opinion already filed.

1. We cannot determine on this appeal the rights of the appellant in the strip of lands upon which it has laid its track across plaintiff's premises, and over which it operates its railway. That question is not presented by this appeal. The circuit judge instructed the jury on that subject as he was requested on behalf of the appellant, and the case has been considered here on the theory (and it cannot properly be considered on any other) that the instructions in that behalf were correct.

2. As to the alleged want of proof that the plaintiff owns the seven acres, and that his mills and dam are located thereon. It is said that there is no proof that the conveyance by James Hutchinson to the plaintiff, executed in 1874, was given to correct the mistake in the deed by the former to the latter executed in 1865. True, no witness so testified directly, but there is enough in the evidence to render the inference irresistible that such was the fact. The deed of 1865 purported to convey an undivided half of premises described precisely as the seven-acre tract is described, except that it locates the land in the southeast quarter of the section instead of the *southwest* quarter. But it also purports to convey "the saw

and grist mill with all the appurtenances thereto belonging, right of flowage, and all the right belonging to the company of J. & J. Hutchinson in the above mill property." It was proved and not disputed that the mills of the plaintiff were the only mills in which that firm had any interest at that time. James Hutchinson gave up the possession of the mills to the plaintiff about the same time, and (so far as it appears), has not since asserted any control over them; but the plaintiff has had the sole possession thereof since that time. The deed of 1874 is a quitclaim deed, containing a correct description of the seven acres. Can there be a reasonable doubt that the deed of 1865 contained a wrong description of the land intended to be conveyed, and that the deed of 1874 was executed to correct the mistake? We have no doubt that the latter deed was given for that purpose.

In respect to the location of the mills, it is only necessary to say here that the jury viewed the premises, and of course the seven-acre tract was pointed out to them, and they could see whether the mills and dam were upon it. Were the mills and dam upon some other tract of land to which the plaintiff claimed no title, the jury would scarcely have assessed damages for injuries to the plaintiff's mills and dam, when they well knew that he owned neither; and the learned counsel for the appellant would not on the trial have overlooked so important a circumstance.

3. The objection is now made (we think for the first time) that the plaintiff cannot recover because he granted to the defendant a right of way over thirty acres of land, when, in fact, he owned but seven acres. Perhaps the plaintiff is liable to respond in damages for covenanting to give more than he had; but that cannot defeat his right of action for the alleged breach of the contract by the defendant. His inability to give the right of way as he agreed through the whole of the thirty acres, confers no right upon the defendant to despoil him of the seven acres.

We do not care to discuss other points urged by counsel. What we have said in former opinions must suffice.

*By the Court.* — The motion for a rehearing is denied, with $25 costs.