Erdman vs. Illinois Steel Co.

Erdman, Respondent, vs. Illinois Steel Company, Appellant.

*December 16, 1896 — January 12, 1897.*

*Master and servant: Personal injuries: Defective machinery: Continuing in service after promise to repair: Assumption of risk: Objection to continuing work: Evidence: Court and jury.*

1. A protest by an employee against continuing in the employment of the master because of some special risk attending it; a promise by the master to remove the danger within a reasonable time; and a continuance of such employment in consideration of such promise,— relieve the employee from the charge of contributory negligence, if injured because of such danger within such time, unless the risk is so obvious and immediate that serious injury may probably result from a continuance of the work.

2. The danger of a saw, four feet in diameter with a crack three inches from the outside, flying to pieces when let down upon large bars or plates of iron while running at a speed of 1,700 revolutions per minute with sufficient force to cut the bars or plates in two, is *held* to have been so obvious, immediate, and constant that an employee engaged in operating it was guilty of negligence in continuing at his work with knowledge of the defect, even in reliance upon the promise of the master to remedy it; and the unsupported testimony of the employee, thirty-five years old and of fourteen years' experience with machinery, that he did not know of the existence of such danger, is insufficient to support a finding of the jury that he neither knew nor ought to have known of it.

3. The testimony of the employee in such case that he asked his vice-principal if he would change the saw; that he did not know that he objected to going to work, or that any one did; that he was

Erdman vs. Illinois Steel Co.

paid by the ton and would have lost a part of a day's work if he had not commenced at that time; and that he asked if the saw was to be changed because he wanted to change his coat,— is *held* to show that the employee did not object to going to work with the defective saw.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

The complaint alleges, in substance, that on the 22d day of February, 1894, plaintiff was in the employ of defendant as shear man; that his duties consisted in assisting in the operation of sawing and shearing heated bars and plates of iron by the use of a large circular saw, about four feet in diameter; that the saw was set in a frame, and so adjusted that, when in motion, by pressing on a lever, it could be lowered down upon the iron placed under the saw to be cut; that, before operations commenced on the day in question, the attention of the foreman was called to the fact that the saw was cracked, defective, and unfit for use; that plaintiff and his co-employees protested against working with the defective saw, but, relying on the assurance of the foreman that it was safe, and that he would furnish a new one after they had worked off one heat, they went to work; that soon thereafter, while plaintiff was with due care engaged at his regular duties, by reason of the aforesaid defective condition of the saw, it broke, and the shaft upon which it ran left its bearings, and fragments of the saw and the shaft struck plaintiff upon the body, by reason whereof he was wounded, bruised, his left leg was shattered, and he was otherwise severely injured. The injuries were set forth in detail, and damages claimed to the amount of $50,000. The answer of defendant admitted the allegations of the complaint respecting the employment of plaintiff and the injury, put in issue all other allegations, and alleged contributory negligence on the part of plaintiff. A special verdict was rendered, upon which judgment was entered in plaintiff's favor, and

defendant appealed, basing such appeal on errors raised by exceptions preserved in the record, which will be noticed in the opinion.

For the appellant there were briefs by *Van Dyke & Van Dyke & Carter*, and oral argument by *W. E. Carter*.

For the respondent there was a brief by *C. J. Faber*, attorney, and *Austin & Fehr*, counsel, and oral argument by *W. H. Austin*.

MARSHALL, J. The jury found specially, among other things, that the saw was defective, to the knowledge of John Blank, who was charged with the duty of seeing that it was kept in proper condition; that John Arndt was the acting foreman; that such foreman, with knowledge of such defect, directed plaintiff and his associates to run one heat, informing them that he would then have the saw changed; that plaintiff went to work relying upon such promise; that defendant was guilty of negligence which proximately contributed to the injury; that plaintiff was not guilty of any such negligence; and that he did not have sufficient knowledge and experience to enable him to know the risk of working with the defective saw prior to his injury. The verdict was challenged as contrary to the evidence, and the ruling of the circuit court in that regard, among others, is before us for review.

That the saw was cracked and defective, to the knowledge of plaintiff, appears clearly from the evidence, and is alleged in the complaint. The proof shows that he was a man of large experience with such machinery, and that he had worked fourteen years in the mill where he was injured, and four years in operating the machine where the accident occurred. His evidence, bearing on his knowledge of the danger, and his justification for working notwithstanding such danger, is substantially as follows: "There were small rollers to carry the iron under the saw. Then the saw was

pulled down onto the iron. I had to stand alongside of the
frame work. The frame was even with the plate. I had
to shove the iron under the saw. I was about two feet from
the saw when the thing happened. When I came to the
mill that morning, Fred Glaesner said to me: 'The saw is
cracked. Look at it.' John Arndt, the foreman, was stand-
ing there. I said: 'John Arndt, will you change the saw?'
He said: 'No; you will have to work one heat with it. It
will take till about 10 o'clock.' I relied on that, and went
to work. He did not say whether it was dangerous, or not,
that I know of. He said it was not dangerous. When they
started, I was holding one end of the bar to be cut, Blank
was holding the other, and Norton was handling the lever."
On cross-examination he said: "I had worked in the mill
fourteen years, and four years with the saw. There were
four men at work with the saw besides Blank, the foreman.
There was no one in the crew that had worked with the
saw longer than I had, and only one as long. I looked at
the saw after Glaesner said it was cracked. The crack was
about two or three inches long. Nobody told me it was
dangerous, or not dangerous, or said anything about that.
The reason I asked Arndt if he was going to change the saw
was, I saw a crack in it. I asked it because I wanted to
change my coat, and I knew if he was going to make the
change I would have time. I went to work because the fore-
man said it was not dangerous. I don't know that he had
ever worked with the saw. I don't know as I objected to
going to work. I don't think I did. I worked by the ton;
so, if I had not gone right to work, I would have lost part
of a day's wages." John Norton testified, in substance, as
follows: Before we started up, *Erdman* told me the saw
was cracked. I said to Arndt, "I think we ought to have
another saw." He said, "You will have to try and work the
heat off." That is all he said. The saw had started, but we
had not commenced cutting. *Erdman* showed me the crack.

It was about three inches long. It was open at the teeth. *Erdman* called my attention to it, and told me to bear down as gently on the lever as I could. I am sure of that. That is just as we were ready to saw the first bar. No one said anything in my hearing about its being dangerous, nothing of the sort. No one, that I know of, made any objection to going to work. John Sanowa testified as follows: "Arndt, the foreman, said the saw should be changed when the heat was out. He said we should work that heat; that is all. I was there till the saw was started, and heard all that was said. Did not hear *Erdman* say anything to Arndt, or Arndt to *Erdman*." Julius Blank testified as follows: "I told Arndt, before we started, that the saw was cracked. He said, when the first heat is out, we will change it. He did not say anything further." There was considerable other evidence on the subject, but nothing to vary the above, on which the jury found, in effect, that plaintiff neither knew nor ought to have known of the risk of working with the defective saw.

A person thirty-five years of age, and of fourteen years' experience with machinery, circumstanced as plaintiff was, must be presumed to know the operation of natural laws, and the dangers which such a defect as the one in question would naturally suggest to a person of ordinary intelligence. *Walsh v. St. P. & D. R. Co.* 27 Minn. 367. Otherwise, the risk that would attend the employment of labor in many manufacturing industries would be so great as to render it impracticable to carry them on. This presumption is too strong to be rebutted, so as to warrant a verdict to the contrary, merely by the evidence of the person whose knowledge is in question that he did not know of the existence of a danger which was obvious to a person of ordinary intelligence, even though not an expert.

But the verdict of the jury is not only wrong, tested by the rule above stated, but the evidence affirmatively shows,

Erdman vs. Illinois Steel Co.

very clearly, that plaintiff was the most experienced man in the crew; that he knew more about the danger than Arndt; that the talk about changing the saw was, partly at least, the result of a consciousness of such danger; and that, after such conversation was over and the saw was started, plaintiff directed that it should be let down onto the iron with great care, on account of its condition. From all the evidence and circumstances but one inference can reasonably be drawn, and that is that plaintiff knew of the danger as well as Arndt, and did not rely upon the judgment of anybody that it was safe to proceed with the work. The verdict of the jury in this regard is practically without any evidence to support it. There is no evidence but that of plaintiff that Arndt said the saw was not dangerous, and he contradicted himself respecting the matter in such a manner that the finding based on his evidence cannot be sustained. It follows that the plaintiff knew of the defect and of the danger as well as any one did, or could reasonably be expected to know. Therefore, he must be presumed to have assumed the risk, unless the case comes within some exception to the general rule on the subject. *Stephenson v. Duncan,* 73 Wis. 404; *Heath v. Whitebreast C. & M. Co.* 65 Iowa, 737; *Anderson v. H. C. Akeley L. Co.* 47 Minn. 128; *Showalter v. Fairbanks, M. & Co.* 88 Wis. 376; *Peterson v. Sherry L. Co.* 90 Wis. 83; *Hazen v. West Superior L. Co.* 91 Wis. 208; *Gibson v. Erie R. Co.* 63 N. Y. 449; *De Graff v. N. Y. C. & H. R. R. Co.* 76 N. Y. 125; *Hayden v. Smithville Mfg. Co.* 29 Conn. 548; *Olson v. McMullen,* 34 Minn. 94; *Devlin v. W., St. L. & P. R. Co.* 87 Mo. 545.

But it is said plaintiff did not assume the risk because the jury found that he protested against working with the defective saw, and was induced to continue his employment by the promise of Arndt to change it as soon as one heat was worked off. The general doctrine is well established that if an employee continues in the employment of the

master with knowledge of any special or extraordinary risk attending the same, or under such circumstances that he is chargeable with such knowledge, he cannot recover of the master for any injuries received by reason of such risk. But to such general doctrine there is the exception for which counsel for plaintiff contends; that is, that when an employee notifies the master of a special risk, and objects to continuing the work under the existing conditions, and is induced to continue such work by a promise to remove the danger within a reasonable time, then for such time the employee is not presumed to assume such risk. Such exception has been often recognized by this court. *Stephenson v. Duncan,* 73 Wis. 404; *Sweet v. Ohio C. Co.* 78 Wis. 127; *Corcoran v. Milwaukee G. L. Co.* 81 Wis. 191. Does this case come within the exception? We will discuss that phase of the matter, assuming that there was a promise made to remove the danger, binding on the master, though that is open to serious question. Did plaintiff commence work, on the morning in question, relying on the promise to change the saw when the first heat was run out? He said he did; but that was his conclusion on a question of fact to be found by the jury, and it is entitled to little, if any, weight, under the circumstances. At the threshold of this question there is the essential element of protest or objection to proceed with the work on account of the danger. We fail to find any evidence of such objection or protest. Plaintiff's evidence on that subject is: "I said, 'John Arndt, will you change the saw?'" "I asked John Arndt if he was going to change the saw." "I do not know as I objected to going to work." "I don't know as any one did." "I was paid by the ton." "If I had not gone to work at 6 o'clock, I would have lost part of my wages." "I asked him [Arndt] if he was going to change the saw, because it was pretty cold and I wanted to change coats, and, if he was going to change the saw, then I would have time to go and put on the coat." From

this it is apparent that plaintiff did not object to working with the defective saw, and did not work with it temporarily in consideration of the promise to change it when the heat was off. He was anxious to commence work on time and put in a full day. It was not very material to the employer whether the work commenced at 6 o'clock or was delayed till 10 o'clock, when the saw could have been changed, because the pay was by the ton, not by the day. The attitude of plaintiff and his associates respecting the matter was merely one of inquiry, whether they were going to be delayed or not, instead of one of objection to or protest against proceeding with the defective saw. So we conclude that the finding, to the effect that plaintiff continued the work in consideration of a promise to remove a danger which he was unwilling to assume the risk of, is without evidence to support it.

But, if the finding of the jury last reviewed could be sustained, the doctrine that an employee can rely upon the master's promise to repair within a reasonable time, to rebut a charge that such employee assumed the risk, is by no means without limitation. If the risk is so obvious and immediate that serious injury may probably result from a continuance of the work, then the doctrine that the employee can proceed, relying upon the promise to repair or to remove the danger, does not apply. *Rothenberger v. N. W. C. M. Co.* 57 Minn. 461. This exception to the exception, if we may call it such, is supported by several good reasons, among which are that it is not consistent with reasonable prudence for one to submit himself voluntarily to imminent danger of probable immediate serious injury, relying upon a mere promise on the part of anybody that such danger will be removed after a time; and further, that, when such danger exists, there is no such thing as a reasonable time to repair, other than presently and before the work proceeds further. To be sure, there are respectable authorities that go so far

Erdman vs. Illinois Steel Co.

as to hold that a promise by the employer to repair relieves the employee of the consequences of the risk, though the danger be constant, immediate, and serious; but the weight of authority and the doctrine of this court are the other way. *Showalter v. Fairbanks, M. & Co., supra.* The true rule is well stated in the opinion by Mr. Justice ELLIOTT in *Indianapolis & St. L. R. Co. v. Watson,* 114 Ind. 20, as follows: " If the services cannot be continued without constant and immediate danger, and the danger and its character are fully known to the employee, he assumes the risk if he continues the employment." Discussing the subject, Justice ELLIOTT says further, in effect, it is a fundamental principle in this branch of jurisprudence that one who voluntarily incurs a known and immediate danger is guilty of contributory negligence, and we are unable to see why a promise should relieve a party from his own contributory fault. If the danger is not great and constant, then such promise may well be deemed to relieve him; but when it is great and immediate, and of such a nature that a prudent man would not ordinarily incur it, a promise does not nullify or excuse the contributory negligence. To the same effect are *Ford v. Fitchburg R. Co.* 110 Mass. 240; *Hough v. Railway Co.* 100 U. S. 214; *Indianapolis U. R. Co. v. Ott,* 11 Ind. App. 564; *Chicago D. F. & F. Co. v. Van Dam,* 149 Ill. 337; *Rothenberger v. N. W. C. M. Co.* 57 Minn. 461; *Atchison, T. & S. F. R. Co. v. Midgett,* 1 Kan. App. 138.

It follows, from the foregoing, that in order to bring a case within the exception to the general rule, that the employee by continuing in the employment of the master with knowledge of defects in machinery at which he is employed assumes the risk attending such employment, it must be shown, not only that he called the master's attention to such defects and in some way objected to assuming the risk, but that the master expressly or by implication promised the employee to remedy the same within a reasonable time, and

that the employee continued in the employer's service relying upon such promise. That will rebut the presumption of contributory negligence and assumption of risk on the part of the employee, and create a presumption that, for the reasonable length of time requisite to enable the employer to remove the danger, the former does not assume the risk, and may prudently continue the work. But if the evidence shows that the danger is immediate, constant, and great, so that a reasonably prudent person ought not to subject himself to it, then the latter presumption is overcome, and the employee has no right of action, in case of an injury because of such danger, on account of his contributory negligence.

It follows, from the foregoing, that if the finding of the jury respecting the agreement to change the saw, and the continuance of the work by plaintiff relying thereon, could be sustained, if the danger was obvious, immediate, constant, and the probable consequences the infliction of serious bodily injury upon plaintiff, it was negligence upon his part to rely upon such agreement. That such was the situation is too plain to admit of serious discussion. It does not require an expert, even, to understand that a saw four feet in diameter, running at a speed of 1,700 revolutions a minute, cracked three inches from the outside, when let down upon a large iron plate or bar and operated with sufficient force to cut it in two, is in danger of flying to pieces and seriously injuring all who may be in the vicinity. That a person of plaintiff's experience with such a machine did not know of such danger is beyond comprehension. It was negligent to the point of recklessness to work with such a defective saw at all, under the circumstances. That brings the case clearly within the exception to the rule that a protest by the employee to continuing in the employment of the master because of the existence of some special risk attending it, a promise by the employer to remove the danger within a reasonable time, and a continuance of such employment in con-

sideration of such promise, relieves such employee from the charge of contributory negligence, if injured because of such danger within such time. It follows that the finding of the jury in respect to plaintiff's contributory negligence is without any evidence to support it on any theory of the case.

There are several errors assigned, not referred to, but the conclusion to which we have arrived renders it unnecessary to consider them.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.