Maitland vs. The Gilbert Paper Co.

MAITLAND, Respondent, vs. THE GILBERT PAPER COMPANY, Appellant.

*October 25 — November 16, 1897.*

*Master's liability to servant: Contributory negligence: Assumption of risk: Proximate cause: Expert testimony: Special verdict: Appeal.*

1. In an action for an injury to one of the plaintiff's eyes, evidence to show the effect produced by such injury on the other eye is admissible.

2. In an action by a stationary engineer for an injury caused by the bursting of a water-glass on his boiler, wherein he claims that the explosion was due to the sudden opening of a valve thereon by an incompetent fireman, expert evidence is admissible as to the effect which would follow such an opening, but it should not go further so as to pass upon the question of proximate cause. Opinion evidence as to an ultimate fact must be given upon a hypothetical case.

3. If a stationary engineer notifies his master of the incompetency of a fireman under his immediate supervision and objects to continuing in the master's employ on that account, yet is induced by the master's promise that he will remove such fireman, to remain for a reasonable time for the performance of such promise, and is injured within that time by reason of such fireman's incompetency, he cannot be charged with contributory negligence or assuming the risk by so doing.

4. For the court, in an action for such injury, to refuse to submit for a special verdict questions covering any other act of negligence except that of retaining such incompetent fireman, does not constitute error, where it did not prejudice the appellant.

5. In such an action, a finding that the defendant's negligence was the proximate cause of the injury is essential to the plaintiff's recovery, unless that fact appears by necessary inference from the facts found or from undisputed evidence, and, if asked so to do, the court should submit that question to the jury.

6. An affirmative answer to the question whether defendant was guilty of negligence which caused the injury is not a sufficient finding that his negligence was the proximate cause, unless the jury were instructed to find what was the proximate cause.

7. Nor does a finding by such special verdict that the fireman was incompetent and was retained by the defendant for an unreasonable

Maitland vs. The Gilbert Paper Co.

time after notice thereof, and that his negligence in suddenly opening a valve in the boiler caused a water-glass to burst and injure the plaintiff, show, as a matter of law, that the defendant's negligence was the proximate cause of the injury.

8. Incompetency exists not alone in physical or mental attributes. Although the servant may have sufficient capacity to do the acts required of him in the capacity in which he is employed, yet if he has not sufficient capacity to understand and obey rules which require him not to disturb parts of machinery with which he has nothing to do and which he was prohibited from touching, he is incompetent, and if the master was negligent in employing or retaining him, and an injury results to a fellow-servant by his neglect or disobedience of such rules, the master will be liable.

9. To render a master liable for an injury caused by his failure to employ competent employees, such failure must have resulted from a want of ordinary care.

10. The refusal of the trial court to set aside a verdict as against evidence will not be disturbed on appeal, if there is any evidence to support it.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This was an action to recover compensation for an injury alleged to have been caused to plaintiff by actionable negligence of the defendant. The facts alleged, as to which there was no dispute, are, that at the time of the plaintiff's injury he was, and for a long time prior thereto had been, in the employ of defendant as an engineer; that his duties were, in part, to attend to the boilers used to generate steam to operate a stationary engine; that under his supervision were firemen, whose duties were to attend to the fires under the boilers, see that the steam pressure was kept at the proper point and that the water in the boilers was kept at the proper level, and to do such other work as plaintiff might require; that there was attached to the boilers a water column to which was connected a water-glass, so arranged as to render visible the height of the water in the boilers; that while plaintiff was standing in front of the water-glass, a few moments after having put a new one in place, and while

Maitland vs. The Gilbert Paper Co.

watching to see that it was properly adjusted, it suddenly burst, causing glass, steam, and hot water to strike plaintiff in his left eye and injure it to such an extent as to destroy it. The negligence charged was that defendant negligently furnished a defective and insufficient water-glass, and knowingly caused the same to be used. This charge, at the close of the evidence, was withdrawn. The further negligence charged was that the fireman Frank Welk was incompetent; that defendant was notified of such incompetence; that plaintiff remained in the employ of defendant on its promise to remove such incompetent fireman and employ a competent person in his place; that after such promise plaintiff remained in the defendant's employ on the faith of such promise, up to the time of the injury; and that the injury was caused by the fireman carelessly suddenly opening and shutting a surface blow-off valve, whereby the pressure in the boilers was suddenly increased. At the close of the evidence a motion was made to direct a verdict for the defendant, which was denied.

A special verdict was demanded by defendant, and the following questions, among others, proposed:

"Did the fireman Welk open the surface blow-off valve as claimed by the plaintiff?

"If you answer the last question 'Yes,' was the opening of such valve by the fireman Welk the proximate cause of plaintiff's injury?

"If the fireman Welk opened the valve as claimed by plaintiff, was he at the time acting in the line of his employment?

"Did the plaintiff have authority to discharge the firemen under him?"

All of such questions were refused, except such as are included in the special verdict, which was rendered as follows:

"First: Was the defendant guilty of negligence that caused the injury of the plaintiff?

"Answer: Yes.

"Second: Was the fireman Welk an incompetent person to discharge the duties of fireman?

"Answer: Yes.

"Third: Did the plaintiff inform Mr. Paul, the superintendent of the defendant, about ten days before the accident, that Welk was an incompetent person to discharge the duties of fireman?

"Answer: Yes.

"Fourth: If you answer the last question 'Yes,' did the plaintiff continue in the employment of the defendant an unreasonable time after such notification and thereby assume the risk of such incompetency?

"Answer: No.

"Fifth: Did Welk suddenly open the surface blow-off valve at the time the plaintiff was examining the water-gauge glass and was injured?

"Answer: Yes.

"Sixth: If you answer the last question 'Yes,' did the sudden opening of the surface blow-off valve cause the bursting of the glass?

"Answer: Yes.

"Seventh: Was the plaintiff guilty of negligence that contributed proximately to the injury?

"Answer: No.

"Eighth: Did the plaintiff have authority to hire and discharge firemen of his own motion?

"Answer: No.

"Ninth: If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess his damages?

"Answer: $1,250."

The evidence as to the first and eighth questions, on the part of the plaintiff, was to the effect that he told Mr. Paul, the superintendent of the company, some time prior to the

injury, that the fireman Welk was incompetent, and that he did not want to remain at his post with such an incompetent person, and that he remained upon Mr. Paul's promise to furnish a competent person in Welk's place; that he did not have any authority to hire or discharge firemen; and that he did not hire Welk. He said, however, that the way Welk came to go to work was that they were short of help; that the other fireman told him he knew of a person that wanted a job, whereupon Welk was brought in and plaintiff set him to work, and that he worked thereafter up to the time of the injury. Mr. Paul testified that plaintiff did not notify him that Welk was incompetent; that plaintiff had the entire charge of his firemen, with authority to hire and discharge them. Mr. Gilbert, the manager of the defendant's business, testified that he gave plaintiff full authority to hire and discharge his firemen. Joseph Gedelski testified that he worked as a fireman with Welk at the time plaintiff was injured; that he had been out of the employment of defendant, at the time of the trial, for some three years; that plaintiff hired him and Welk and fixed their wages; and that he had seen plaintiff hire and discharge firemen frequently. Frank Welk testified to the same effect.

: The evidence showed that the boilers were all connected together; that the water-glass was attached to the water column by being engaged by a brass socket at the top and bottom with rubber gaskets resting against the ends of the glass, and pressed sufficiently hard against the glass, by screwing up a nut at the bottom, to prevent the escape of steam or water. In each of the brass connections there was a valve by which water was let in at one end, and steam at the other, from the water column. The glass was about fourteen inches long and three fourths of an inch in diameter. It was located about eight feet above the floor; there was a valve in an outlet pipe leading off from the bottom of the boilers, about two inches in diameter, used to drain the boil-

ers; there was a surface blow-off valve located back of the boilers, connected with pipes entering the boilers at about the water line, which extended through the boilers and were perforated, so that when the valve was opened the scum from the top of the water would flow off through the pipes. This surface valve was used for the purpose of clearing the boilers from such impurities as might rise to the surface of the water. On top of the boilers there was a suitable escape valve to relieve the boilers whenever the steam pressure was above 120 pounds. There was a four-inch pipe from each boiler, connected with a six-inch pipe that conveyed steam to the engine. At the time of the accident the engine was in operation, making about seventy revolutions per minute. The surface valve was not used except to remove impurities from the boiler. It was opened by means of a wrench, and the operation consisted in placing the wrench on a nut or nipple at the top of the valve and turning it half around, to open it full. The wrench was hung near the valve. The evidence further showed that the plaintiff, shortly before he was injured, placed a ladder in position and went up to insert a new glass in the proper place on the water column; that he attached the glass, and later went up to examine it, when it burst and he was injured.

In respect to the fifth question, covering the subject of whether the fireman opened the surface blow-off valve, and in respect to whether the glass was broken by reason of such opening of the valve, plaintiff testified that, while standing on the ladder, the fireman passed him, going toward the back of the boilers, and immediately afterwards the glass burst, causing the injury; that he immediately got down from the ladder and went to the back of the boilers, supposing that the blow-off pipe had been opened, and found the fireman standing there with his hand on the wrench attached to the valve, and the valve wide open; that he immediately closed the valve, then returned to the front of the boilers

and closed the valves connecting the water column with the glass, then went and got a new glass and put it in. The fireman testified, in effect, that he did not open the valve or go to the back end of the boiler at all; that he noticed before plaintiff was injured that the glass was broken, and asked him to put in a new one; that plaintiff thereupon put in a glass; that it leaked at the bottom; that Welk then, at plaintiff's request, handed him a wrench and then stood close by him and saw him turn the wrench to tighten up the connections, when the glass broke; that plaintiff immediately came down and ran into the engine room, and another engineer came and put in a new glass. Mr. Paul testified that he saw plaintiff a few moments after the accident, at which time plaintiff said that he had the glass in all right; that it leaked a little and he took a wrench and screwed up the bottom nut on the glass and snapped it; that the injury was caused by his own carelessness. Olaf Jorgenson testified that he was one of the engineers and was in the engine room at the time plaintiff was injured; that plaintiff came into the engine room wet and bleeding; that he said he was hurt by the water-glass; that the witness asked how it occurred, and plaintiff said he was setting up the jam nut on the glass with a wrench; that after witness helped him wipe his eye as best he could, plaintiff left the engine room for the office, and witness went and put in a new glass.

In respect to whether the opening of a surface blow-off valve would tend to increase the pressure in the boiler, plaintiff and one engineer testified in the affirmative, and four experienced engineers, none of whom were connected with the defendant, testified in the negative. Evidence was received, under objection, respecting the effect of the injury to the left eye upon the right eye. Some exceptions were taken to refusals of the court to charge the jury as requested by defendant; also exceptions to some instructions that were given, which will be noticed in the opinion so far as neces-

sary. There was a motion made to set aside the verdict and for a new trial, which was denied. Judgment was rendered in favor of the plaintiff, from which this appeal was taken.

*J. C. Kerwin*, for the appellant.

For the respondent there was a brief by *Felker, Stewart & Felker*, and oral argument by *C. W. Felker*. They contended, among other things, that the plaintiff was an expert, and competent to testify as such as to the proximate cause of the injury. His opinion was followed by the facts on which he based it. The plaintiff did not continue in the defendant's employment an unreasonable time after giving notice of the fireman's incompetency so as to assume the risk. *Stephenson v. Duncan*, 73 Wis. 404; *Hough v. Railway Co.* 100 U. S. 213. The jury having found upon sufficient evidence that the accident was caused by the negligence of the fireman, the defendant was bound to show that he was a competent person for his position, that being a defensive fact. *Haley v. Western Transit Co.* 76 Wis. 344. There being no dispute as to what the duties of the fireman were, the question as to whether his act was in the line of his duty was one of law. *Fick v. C. & N. W. R. Co.* 68 Wis. 469; *Reinke v. Bentley*, 90 id. 457.

MARSHALL, J. Evidence was allowed, under objection from defendant's counsel, respecting the effect on plaintiff's right eye of the injury to the left eye. The complaint charged that the direct injury from the breaking of the glass was to the left eye. We see no reason why evidence as to all the injuries to plaintiff, which flowed naturally from the destruction of the left eye, was not competent. The objection to the evidence was properly overruled.

Plaintiff was allowed, under objection, to answer the question: "What, in your opinion, was the cause of the explosion of the glass?" That was one of the most essential questions

Maitland vs. The Gilbert Paper Co.

the jury were to determine.    True, whether the sudden open-ing of the surface blow-off valve, under the circumstances, would naturally tend to produce what occurred, was a ques-tion upon which expert evidence was proper.    But the fact of whether the valve was opened, and, if opened, was opened suddenly, was in dispute on the evidence.    Therefore, expert evidence should have been limited to opinions as to the effect of a sudden opening of the valve.    When it went to the extent of passing on the whole case in respect to the fact in issue, as did the question objected to, it went too far, and the allowance of it was error.    Where evidentiary facts, upon which the fact in issue depends, are in dispute, opinion evi-dence as to the ultimate fact must be given upon a hypothet-ical case.    *Luning v. State*, 2 Pin. 215; *Wright v. Hardy*, 22 Wis. 348; *Kreuziger v. C. & N. W. R. Co.* 73 Wis. 158.    The rule is that experts are not to decide issues of fact, hence all questions calling for opinion evidence must be so framed as not to pass upon the credibility of any other evidence in the case, else it will usurp the province of the jury or the court. Jones, Ev. § 374, and cases cited.

It was further assigned as error that the court denied de-fendant's motion to direct a verdict.    The motion was based on the theory that plaintiff and Welk were fellow-servants and that the circumstances were such, if plaintiff is to be be-lieved, that he assumed the risk of Welk's incompetency by remaining in the defendant's employ with knowledge thereof. The rule in *Erdman v. Illinois Steel Co.* 95 Wis. 6, is invoked to sustain the claim that plaintiff was guilty of contributory fault under the circumstances, notwithstanding he remained at his post, if such be the fact, on the faith of defendant's promise to remove the incompetent co-employee.    There is no controversy but that, generally speaking, if an employee notifies the master of a special risk, as for instance that of the incompetency of a fellow employee, and objects to con-tinuing in the master's employ on that account, but never-

theless remains upon the faith of the master's promise to remove the special danger, for a reasonable length of time requisite to the performance of such promise by the exercise of reasonable diligence, the protesting employee cannot be successfully charged with contributory negligence on that ground.   That is. an exception, well established in the law of negligence, to the general doctrine that if an employee continues in the employ of the master with knowledge or reasonable means of knowledge of a special risk of so doing, he cannot recover from the master for an injury received by being exposed to such risk, on account of his contributory negligence.   In *Erdman v. Illinois Steel Co., supra*, a limitation of the foregoing exception to the general rule was recognized, which governed that case.   Such limitation is just as well established in the law of negligence as the general rule itself or the exception thereto, as was there sufficiently demonstrated by reference to a multitude of authorities. Such limitation is to the effect that, notwithstanding the master's promise to remove the danger complained of, if the circumstances are so extraordinarily dangerous, so immediate and obvious, that a person of ordinary care would not ordinarily incur it, then the exception to the general rule does not apply.   It only applies where the danger is not so great, constant, and immediate but that a person of ordinary prudence would ordinarily subject himself to it for the limited time necessary for the master, with reasonable diligence, to remove it.   Here Welk was working under the immediate supervision of plaintiff.   It is by no means conclusive that the circumstances were such that plaintiff may not reasonably have supposed that he could so supervise Welk's conduct as to temporarily avoid any serious danger of his presence as a co-employee.   The facts of the case come far short of the rule in *Erdman v. Illinois Steel Co.*   There the employee, because of his own interest, deliberately went to work with a broken saw, revolving at great speed, to cut

bars of iron, under such circumstances that it was apparent that the saw was liable to fly in pieces at any moment and seriously imperil the personal safety of every person in the vicinity. The motion to direct a verdict was properly refused.

A large number of questions were submitted by defendant, relating to the subject of negligence in respect to the water-glass. . The trial court withdrew that subject from the jury, leaving the charge of negligence resting wholly on the claim that defendant negligently retained in its employ an incompetent employee, after notice of his incompetence. · So, the refusal to submit questions covering any other subject of alleged negligence did not prejudice the defendant, hence does not constitute error.

This question was submitted by defendant's counsel and refused: " Was the opening of the surface blow-off valve the proximate cause of plaintiff's injury?" It was not claimed that the mere opening of the valve was the proximate cause of plaintiff's injury, but that the negligent retention of the incompetent servant was such cause. If the circumstances of the case were such that the only inference that could be reasonably drawn therefrom was that, if Welk remained in defendant's employ, he was liable to do some act, or fail in some duty, that might probably imperil the personal safety of his fellow-servants, defendant, in the light of attending circumstances, ought reasonably to have foreseen that such might probably be the result of his retention, and that what followed was a natural and probable result thereof, then the fact found in favor of the plaintiff, in answer to the question proposed, would relate back to the negligent retention of the incompetent servant as the real producing cause of the accident, and make plaintiff's case perfect on the subject of proximate cause. The request for the question in the form proposed must be taken as an admission by defendant that the inferences referred to would follow a find-

ing on such question in plaintiff's favor.   As has often been held by this court, in some proper way, a finding as to the proximate cause was essential to plaintiff's recovery, unless the fact appeared by necessary inference from facts found or from the undisputed evidence.

Turning to the verdict, the answer to the first question merely found that the defendant was guilty of negligence which caused the injury.   This court has repeatedly held that such a finding comes far short of determining the proximate cause.   The question has been so many times discussed that we will not go over it again at this time.   In *Deisenrieter v. Kraus-Merkel Malting Co., ante*, p. 279, all the important cases on the subject in this court will be found cited. The precise form of the finding under discussion was condemned as insufficient in *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348.   True, the trial court might have so instructed the jury as to make such question call for a finding of the proximate cause, but there was a failure so to do.   On the contrary, an examination of the charge leads to the conclusion that the trial court submitted the case on the theory that if the jury found that the defendant was negligent and that such negligence caused the injury to the plaintiff, and plaintiff was free from contributory negligence, he was entitled to recover.   The learned circuit judge said in regard to the question: "It goes to the gist of the action, and all the other questions are embraced within it."   The meaning of such instruction cannot be misunderstood.   If it means anything, it means that all the other questions go no further than the first in determining the facts essential to plaintiff's recovery, so far, at least, as relates to the defendant's fault.   That overlooked entirely some of the essential elements of actionable negligence.   It only exists where the party whose fault causes the injury was not only negligent, but the injury was the natural and probable result of it, and the attending circumstances were such that a person of ordi-

nary care ought reasonably to have apprehended that a personal injury to another might probably result from such negligence.

The other findings on the subject of negligence are that Welk was incompetent, that he was retained by defendant after notice of such incompetency an unreasonable length of time, and that the accident was caused by his suddenly opening the surface blow-off valve. That may be all true, and yet the bursting of the glass from such cause be such an extraordinary occurrence that it would not follow that a person of ordinary care, in the light of attending circumstances, ought reasonably to have apprehended it. Neither does it follow, under the circumstances, conclusively, that defendant ought reasonably to have apprehended that the retention of Welk would or might probably imperil the personal safety of his co-employees. Therefore, the fact of proximate cause was not found by the jury, and does not follow as a conclusion of law from the facts found, and does not appear by the undisputed evidence. Hence, the court erred in not submitting the question suggested by the defendant, or some other question, calling for a finding of this essential fact, or in not so instructing the jury in respect to the first question as to make that cover the subject. On the case as it stands, the verdict is not sufficient to sustain a judgment, according to repeated decisions of this court.

The trial court refused to give the following instruction: "The mere fact that Welk generally was incompetent as a fireman will not authorize you to answer the first question, that the defendant was guilty of negligence; you must further find that the fireman Welk did some act which as a fireman it was improper for him to do, and which act directly and naturally caused the explosion of the glass. Unless these facts are established by a preponderance of the testimony you must answer the first question 'No.'" Also refused to instruct the jury, in substance, that, 'unless they

found that Welk opened the valve in a negligent manner, that it was within the scope of his employment, and that it was the proximate cause of the plaintiff's injury, they must answer the first question "No."' And further, that 'the undisputed facts show that if the fireman opened the valve it was not within the scope of his employment.' If the purpose of such instructions was to inform the jury that the defendant was not chargeable with the negligence of Welk, unless it was in doing some act that he was required to do as fireman, they were properly refused. Incompetence is by no means confined to mere inability to do properly the particular work required. It goes to reliability in all that is essential to make up a reasonably safe person, considering the nature of the work and the general safety of those who are required to associate with such person in the general employment. A person may be competent to do the particular acts required of a fireman, yet be so careless in respect to obeying the rules that prohibit him from interfering with appliances not connected with his work, as to render him an exceedingly dangerous and incompetent person to be associated with. The rule is tersely stated in the opinion of Mr. Justice BROWN in *Coppins v. N. Y. C. & H. R. R. Co.* 122 N. Y. 557, substantially thus: 'A competent man is a reliable man. Incompetency exists not alone in physical or mental attributes, but in the disposition with which a person performs his duties, and though he may be physically and mentally able to do all that is required of him, his disposition toward his work, and toward his employer, and toward his fellow-servants, may make him an incompetent man.' So here, though it may be true that Welk had sufficient capacity to do the acts required of him as a fireman, yet if he had not sufficient capacity to understand and obey rules which required him not to disturb parts of the machinery with which he had nothing to do, and which he was prohibited from touching, a violation of which rules was liable to imperil the personal safety of his fellow-servants, he was

Maitland vs. The Gilbert Paper Co.

incompetent.  And if the master was negligent in employing or retaining him, a resulting injury to a co-employee, by such incompetent servant disobeying such rules, or neglecting to do properly some act required of him as fireman, would equally relate to the master's negligence as the proximate cause.  So the instructions referred to were properly refused.

It is assigned as error that the court instructed the jury regarding the first question, as follows: " An employer is bound to furnish competent employees; if he fails to do so he is liable for injuries caused by their incompetency, unless the co-employee assumes the risk."  That, in effect, told the jury that a failure to furnish competent employees renders the employer liable, without regard to whether such failure is the result of a want of ordinary care or not.  Such is not the law, and we apprehend the learned circuit judge did not intend to be so understood, but it is hard to perceive how the jury could have otherwise understood the language used. The rule is that the master must use ordinary care and diligence in respect to employing competent servants, having regard always to the character of the particular service and the consequences that may probably result from incompetency in such service.  When such care and diligence shall have been exercised and a servant is nevertheless employed who is incompetent, a resulting injury to a fellow-servant cannot legally be chargeable to the master upon the ground of neglect of duty to such injured servant.  7 Am. & Eng. Ency. of Law, 844, and cases cited.

It is further assigned as error that the court refused to set aside the verdict as against the weight of evidence.  This court cannot decide whether the trial court held right or wrong on that, as an original proposition.  For sufficient reasons the duty of preventing injustice through a wrong verdict is vested primarily in the trial court.  From its decision, right or wrong, there is no relief under our system of jurisprudence, unless such decision be made to appear by the

record so manifestly wrong as to amount to a clear abuse of judicial discretion, and that occurs ordinarily only where there is practically no proper evidence which, if believed, will support the verdict. From the fact that where there is a wrong verdict on the evidence, and yet there is evidence which, standing alone, may reasonably be believed, to support it, there is no relief on appeal, trial courts should, with deliberation and care, exercise the broad legal discretion with which they are clothed, so as to promote, so far as practicable, the due administration of justice. Here, as appears by the record, several important allegations with little or no evidence to support them except that of the plaintiff himself were found in his favor by the jury, notwithstanding the evidence of several witnesses, some of whom at least were disinterested so far as the record shows, and very strong probabilities growing out of the situation, to the contrary. Yet the decision of the court on the motion to set aside the verdict is to the effect that it is not against the clear preponderance of the evidence, and inasmuch as we cannot say that the plaintiff's evidence is impeached by all the other evidence, and all the reasonable probabilities, so as to bring the case within *Badger v. Janesville Cotton Mills*, 95 Wis. 599, and *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, the decision must be sustained on this appeal. The case is within *O'Brien v. C. & N. W. R. Co.* 92 Wis. 340, and within the general principle that the action of the trial court, in refusing to set aside a verdict as against the evidence, will not be disturbed if there is any evidence to support it. *Weatherby v. Meiklejohn*, 61 Wis. 67; *Van Doran v. Armstrong*, 28 Wis. 236; *Hutchinson v. C. & N. W. R. Co.* 41 Wis. 541; *Seymour v. Seymour*, 64 Wis. 16; *Hickey v. C., M. & St. P. R. Co.* 64 Wis. 649; *Austin v. C., M. & St. P. R. Co.* 93 Wis. 496.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.