YERKES, Respondent, vs. NORTHERN PACIFIC RAILWAY COMPANY, Appellant.

*November 5 — November 29, 1901.*

*Master and servant: Personal injury: Defective appliance: Promise to repair: Protest against continued use: Court and jury: Imminent danger: Contributory negligence: "Ordinary care:" Instructions to jury: Evidence: Opinion as to conduct: Damages.*

1. In order that a servant may, without assuming the risk of injury, temporarily continue to work with a defective and dangerous appliance in reliance upon a promise by the master to repair, there need not be a direct threat on his part to quit work unless the repairs are made, but the master must be given to understand that the servant protests and objects to continued exposure to the danger.

2. Plaintiff, an experienced railroad yard foreman, entered in a book which was the ordinary medium of communication between himself and his immediate·superior, the yard master, a notification of

a defect in the footboard at the back end of the switch engine. The same afternoon both the yard master and the plaintiff called the defect to the attention of the roundhouse foreman, an employee having charge of repairs, over whom neither had any control. The roundhouse foreman remarked that the step was not very bad, and plaintiff replied, "It is bad enough, and I want it fixed; I consider it unsafe." When the engine was again brought out for use that evening plaintiff called the attention of the yard master to the failure to repair the step, and the latter replied, "Use it to-night, and I will see that it is fixed to-morrow." *Held,* sufficient to take to the jury the question whether plaintiff protested and objected to further use of the engine.

3. A servant is not, as a matter of law, guilty of contributory negligence in continuing to work temporarily with a known defective appliance, after a promise to repair, if an ordinarily prudent person, under like circumstances, might reasonably believe and expect that by the exercise of extra care and caution he could avoid and avert the threatened peril.

4. An erroneous instruction on a given subject is not cured by a correct statement of the law elsewhere in the charge.

5. The footboard, ten inches wide, at the back of a switch engine, had become bent at one corner so that the outer edge was from two to three inches lower than the inner edge, but the engine was provided with a hand hold by means of which one could protect himself from falling, and it had been used in that condition by the switching crew at least two nights before the accident. *Held,* that the peril therefrom to the yard foreman was not so imminent, so constant, and so unavoidable but that a reasonably prudent man might, without being guilty of negligence as matter of law, continue to use the engine pending a promise to repair.

6. Ordinary care is the care ordinarily exercised by the great mass of mankind, or the ordinarily prudent person, under the same or similar circumstances, and an omission from an instruction to the jury of the qualification "under the same or similar circumstances," or "under like circumstances," is error.

7. The plaintiff in an action for personal injuries is entitled to recover damages for such suffering and impairment of abilities as he is *reasonably certain* to endure in the future as the result of his injuries; and an instruction limiting his right to recover to such "as he will be compelled to undergo," and "will actually sustain," is not prejudicial to defendant.

8. The plaintiff in an action for personal injuries caused by a defective appliance may properly be allowed to testify that he continued to

work in reliance upon a promise to repair, but not as to whether he would so have continued had the promise not been given.

9. In an action by an experienced railroad man earning $80 per month to recover for the loss of a leg below the knee and other injuries, an award of $10,000 damages is *held* not excessive.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Plaintiff, an experienced railroad man, was employed by the defendant as a night yard foreman, at a salary of $80 per month; his duty being, by use of a certain switch engine and its crew and a helper, to make up trains and move cars about in the yard of the defendant at Mandan, South Dakota. The switch engine, while so operated by him, met with an accident whereby the footboard at the back end of it, on which it was necessary for plaintiff and his assistant to ride in doing their work, was bent downward at the outer edge, at one corner, some two and one-half or three inches from its proper level. After continuing work with the engine for some two days, plaintiff, in the course of his business, by way of notice to his immediate superior, entered upon a book the fact that this was unsafe and needed repair. At the same yard was the roundhouse foreman, who was independent in employment both of the plaintiff and of his immediate superior, the yard master, but whose duties, amongst others, were to keep the appliances, especially the switch engines, in repair. In the forenoon after the giving of the notice as aforesaid, both the yard master, plaintiff's immediate superior, and himself called the attention of the roundhouse foreman to the necessity of repairing the defect in the engine. He remarked that it did not look very bad, whereupon the plaintiff stated that it was unsafe and that he wanted it fixed at once; whereupon he said, "We will fix it as soon as we can." On coming to work that evening the plaintiff noticed that the engine had not been repaired, and said to his superior, the yard master, "There is that

engine; it hasn't been fixed;" to which the yard master replied, "Work with it to-night, *Charley*, and I will see that it is fixed to-morrow." That night, while in the course of his duty attempting to alight from this footboard, he slipped, as he testified, by reason of the slant in the board, and suffered severe injuries, amongst others the loss of one leg below the knee. Plaintiff testified, under objection, that he would not have continued to work on the engine but for the promise of early repair. A verdict was found in favor of the plaintiff for $10,000, upon which, after a motion to set aside and grant a new trial upon the ground, amongst others, that it was contrary to the evidence, judgment was entered for the plaintiff, from which the defendant appeals.

For the appellant there was a brief by *Louis Hanitch*, attorney, and *C. W. Bunn* and *L. T. Chamberlain*, of counsel, and oral argument by *Mr. Bunn*.

For the respondent there was a brief by *A. M. Warden* and *Daly & Barnard*, attorneys, and *John Lind*, of counsel, and oral argument by *L. D. Barnard*.

DODGE, J. Two of appellant's contentions may well be considered together. The first is that there was no sufficient evidence of any protest or objection by the plaintiff against continuing to work with the defective locomotive to carry the question to the jury, and therefore a verdict should have been directed in defendant's favor. The other contention is that the instruction given to the jury on this subject was erroneous. The conditions under which an employee may knowingly continue to work with a defective and dangerous appliance, in reliance upon a promise to repair, have been many times stated, and ought not to be in serious doubt. Judge Cooley (Torts, p. 559) states the rule:

"If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative; and

the master is not in the exercise of ordinary care unless and until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks."

In *Stephenson v. Duncan*, 73 Wis. 404, 407, this court said:

" Where the servant, having the right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances by the master that the danger shall be removed, such assurances remove all ground for holding that the servant, by continuing in the employment, engages to assume the risk."

In *Erdman v. Illinois S. Co.* 95 Wis. 6, 12, in dealing with an alleged continuance at work in reliance on a promise to remove the danger, we said:

" At the threshold of this question there is the essential element of protest or objection to proceed with the work on account of the danger."

Other cases on the subject: *Sweet v. Ohio C. Co.* 78 Wis. 127; *Maitland v. Gilbert P. Co.* 97 Wis. 476, 484; *Jensen v. Hudson S. Co.* 98 Wis. 73; *Curran v. A. H. Stange Co.* 98 Wis. 598.

From these cases it is apparent that the assumed willingness of an employee to continue work with the appliances supplied him, at his own risk, must be negatived, and it must be made apparent that the master or those representing him understand he is not so willing. Further, such unwillingness, brought to the knowledge of the master, may and must be overcome temporarily by a promise to remove the danger within a reasonable time. Appellant's counsel seems to contend in his brief, though not so obviously in oral argument, that there must be a direct threat to quit work unless the repairs be made. This is not essential. Indeed, there may be cases where not even a spoken word from the employee is necessary, if it is apparent that the master or those representing him understand that a state of unwillingness and objection exists, and that such unwillingness is overcome by the promise of repair. The very man-

ner of making the promise may well indicate the under-
standing of the master that such unwillingness and mental
protest does exist.   That fact must appear, however; for it
cannot be said that one refrains from abandoning service
because of a promise, if it were not also true that but for
that promise he would abandon it, and one cannot be said
to continue in a perilous employment by reason of a prom-
ise if he were not otherwise unwilling so to do.   Hence the·
rule tersely suggested in the *Erdman Case* is undoubted,
that the master must be given to understand that the serv-
ant protests and objects against continued exposure to the
danger.   If, so understanding, he promises to remove it,
the servant is justified in temporarily continuing the em-
ployment until such reasonable time has elapsed as to de-
stroy his right to rely upon the promise to repair, except·
in certain cases of peculiarly great, imminent, and unavoid-
able danger, of which more hereinafter.   The master mean--
while is responsible for such injuries as are proximately
caused by the defect, without contributory negligence.

In this case the plaintiff first entered in a book a notifica--
tion of the defect and need of repair, which book was an
ordinary medium of communication between himself and
his immediate superior.   This act alone might, as counsel
for appellant argues, be ambiguous.   It might convey no·
intimation of plaintiff's unwillingness to expose himself to
the peril of the defect, but merely an intention to perform
a duty of notifying the master, in order that it might, for
its own purposes, make repair.   The further conversation
between the plaintiff and the yard master, and also between
the plaintiff and the yard master and the roundhouse fore-
man, is much more significant.   It was addressed to the lat-
ter, to whom plaintiff had no right to give orders or direc-
tions. . The roundhouse foreman remarked that the step in
question was not very bad, to which *Yerkes* responded, evi-
dently with considerable emphasis: " Well, it is bad enough,.

and I want it fixed; I consider it unsafe." We think this language certainly capable of being understood by those representatives of the master as expressing a state of protest and objection against further exposure to this dangerous condition. The words, "I want it fixed," "it is unsafe," could hardly be attributed to anything but such state of mind. Plaintiff had no right to express a command or direction to either of the others. They and he well understood that the only alternative within his control was to quit if his wish were not complied with. To express such wish was idle, unless some result were to follow refusal, but his manner and words were evidently inconsistent with mere futility. We think they might well convey to his hearers a purpose to act for his own protection if they would not. That they were so understood by the representatives of the master is clearly shown by the interview of the evening, when the engine was again brought out from the roundhouse. Plaintiff then said to the yard master, "There is that damn footboard now, and it hasn't been fixed." To this statement the yard master replied, "Use it to-night, *Charley*, and I will see that it is fixed to-morrow." These words would have been in no wise responsive to the plaintiff's remark, except as the latter was understood to convey the idea of protest against' working with this device. We are satisfied that these conversations and declarations of the plaintiff were sufficient to carry to the jury the question whether he was protesting and objecting.

The instruction to which exception was taken was in the following words: "In other words, the general rule is that the servant assumes all ordinary risks of his employment, and if any defect in the tools, implements, or appliances is called to the attention of the employer, and the employer agrees to repair such defect, the employee may rely upon it, and continue his employment on the strength of the promise to repair, provided it is done within a reasonable time."

This instruction is clearly bad, in that it does not insist upon the element of protest and objection above discussed. It would be satisfied although the servant called the defect to the attention of his master under circumstances in no wise implying or indicating that he was unwilling to continue working with it in its then condition. In so far it was misleading, improper, and erroneous. True, in the same paragraph the court made another statement of the rule, in which he described the duty of the employee as to notify the employer of a special risk and object to continuing the work under the then existing conditions, but we cannot hold that thereby the vice in the portion excepted to was cured. The court attempted, apparently, to phrase the same rule twice. In so doing he expressed it once correctly, but again erroneously. It is well settled in this state that an erroneous instruction on a given subject is not cured by the fact that the law is correctly stated elsewhere; for it cannot be known whether the jury have been guided by the correct rule or by the erroneous one.

2. Appellant further contends that a verdict for the defendant should have been directed, and, one for plaintiff having been rendered, it should have been set aside, for the reason that the peril from the bent and slanting footboard was so obvious and imminent as to make serious injury so probable that plaintiff could not, consistently with reasonable care, expose himself to that peril, even temporarily and for a reasonable time, until the promise of repair was performed; resting mainly upon *Erdman v. Illinois S. Co.* 95 Wis. 13. That case stated a rule of law applicable to the liability of master to servants, well supported in reason, salutary and proper in a case falling within it, such as that presented on that occasion, where a mechanic, with full knowledge of the peril, placed himself in front of a saw revolving 1,700 times a minute, which he knew to be cracked, and attempted to saw bars of iron therewith. The continued

increase of the fissure in the saw was certain. It was obvious
that the saw must very soon, and might at any moment, fly
into fragments; that when it did so very serious injury to
him was certain; and that no exertion or precaution on his
part could protect him therefrom. That case was followed
by *Maitland v. Gilbert P. Co.* 97 Wis. 485, wherein the
opinion was written by Mr. Justice MARSHALL, and the case
was distinguished from the *Erdman Case* in the following
words:

"Here Welk was working under the immediate supervision
of plaintiff. It is by no means conclusive that the circum-
stances were such that plaintiff may not reasonably have
supposed that he could so supervise Welk's conduct as to
temporarily avoid any serious danger of his presence as a
co-employee."

The same distinction was pointed out in *Curran v. A. H.
Stange Co.* 98 Wis. 606. See, also, *Jensen v. Hudson S. Co.*
98 Wis. 73; *Nelson v. Shaw,* 102 Wis. 274, 278. From these
authorities it results that it cannot be said as matter of law
that one is so guilty of contributory negligence in continu-
ing to work, even temporarily, with a known defective ap-
pliance, after a promise of repair, if an ordinarily prudent
person, under like circumstances, might reasonably believe
and expect that by the exercise of some extra care and pre-
caution he could avoid and avert the threatened peril. We
think the facts in this case might well support such a con-
clusion by a jury. While it is undisputed that the step in
question, ten inches in width, was bent down at one corner
so that the outer edge was from two to three inches lower
than the inner edge, yet the engine was provided with a
handhold by means of which one could protect himself
from falling. It had been used for at least two nights be-
fore this promise of repair, both by the plaintiff and by his
helper, and no accident had occurred. Evidently it was the
opinion, both of his superior, the yard master, and of the
roundhouse foreman, that it might be used without serious

and imminent peril, and that such use was not unreason-
able.   We cannot say that there was no evidence which,
most favorably viewed, might support the inference drawn
by the jury that the peril was not so imminent, so constant,
and so unavoidable but that a reasonably prudent man
might, without negligence, continue to use it pending the
fulfilment of the promise to repair.   That question was sub-
mitted under an instruction expressing the rule of the *Erd-
man Case* with at least sufficient stringency against the
plaintiff.

3. Plaintiff assigns as error the definition of the due care
which plaintiff was bound to exercise to avert the charge of
contributory negligence, viz.:

" The plaintiff cannot recover in this case unless you find
that he was in no manner guilty of any want of ordinary
care, or such care as persons of ordinary care ordinarily use,
which contributed to his said injuries."

That this was an incorrect and misleading definition of
" ordinary care " has been declared so often by this court as
to make further discussion unnecessary.   The rule has been
repeatedly laid down that due care is to be tested by the
surrounding circumstances, and that no definition is com-
plete or correct which does not embody that element.   Or-
dinary care is the care ordinarily exercised by the great
mass of mankind, or its type, the ordinarily prudent person,
under the same or similar circumstances, and the omission
of the last qualification, "under the same or similar circum-
stances," or " under like circumstances," is error.   *Boelter v.
Ross L. Co.* 103 Wis. 324, 330; *Dehsoy v. Milwaukee E. R.
& L. Co.* 110 Wis. 412; *Warden v. Miller, ante,* p. 67.   The
necessity of the omitted qualification to a correct definition
of due care is especially obvious under the circumstances of
this case.   What would be the care of an ordinarily prudent
person, standing in safety upon a stationary platform, or
even standing upon the perfect and level footboard of a

moving switch engine, would not be the care to be expected of one attempting to perform the services of a yard man upon a bent, declining, and defective footboard such as here presented. The attention of the jury was not called by this instruction to a very important element which they must consider in order to decide whether the plaintiff was or was not guilty of contributory negligence, and the instruction to them on the subject was therefore misleading and erroneous.

Since, by reason of the two errors already pointed out, this cause must be reversed and remanded for a new trial, it is perhaps not necessary to discuss fully some of the other assignments of error. It may be well, however, to notice the instructions with reference to damages for future suffering and impairment of ability. The court instructed that, in case the jury found the injuries to be of a permanent character, they should assess "such damages for physical and mental suffering as he will be compelled to undergo in the future, and for future loss of time, but can only assess such damages as you find from the evidence the plaintiff has actually sustained and will actually sustain if his injuries are permanent." That there was evidence to justify the jury in finding permanent injury and future suffering we have no doubt. The loss of a limb of course impairs one's efficiency, comfort, and enjoyment of life, and in this case there was evidence of a stubborn resistance to complete healing of the wound resulting from amputation. The elements in the instruction which are criticised are the two expressions, "as he will be compelled to undergo," and "will actually sustain." We cannot discover in these anything injurious to the defendant, for they seem to require a higher degree of certainty of such injury than is justified by the law. The rule has been many times stated that a plaintiff is entitled to recover damages for such suffering and such impairment of abilities as he is *reasonably certain* to endure as

the result of his injuries.  This measure of certainty should
be required of a jury, and not a different one, which may or
may not be its equivalent.

Error is also assigned upon the overruling of objections
to certain questions to witnesses.  The court, over defend-
ant's objection, asked the question of the plaintiff: " How
did it happen that you remained there and used that engine
after — worked on that engine — after you noticed the con-
dition it was in?  A. I stayed there and worked because
they had promised to fix it."  The plaintiff was then asked
by his counsel, " Would you have worked on that engine
after you discovered the condition it was in there, if they
had not promised to repair it? " to which, after objection,
he answered, " I would not."  These questions were ob-
jected to because they called for the conclusion of the wit-
ness.  The first of them is unobjectionable.  It is but testi-
mony of the plaintiff to his mental processes.  It differs
not at all from the question usually propounded in actions
of deceit, whether or not the defrauded party believed and
relied on the fraudulent statement, and whether he was in-
duced to act thereby; and while such evidence is, at best,
of but little weight, as said in the *Erdman Case*, 95 Wis. 12,
it is admissible.  *Curran v. A. H. Stange Co.* 98 Wis. 606;
*Great Northern R. Co. v. McLaughlin*, 17 C. C. A. 330, 333.
The second question, whether plaintiff would have worked
on the engine but for the promise, is objectionable in form.
So far as it goes only to the proposition that he relied on
the promise and was induced thereby to work, it is in parity
with that asked by the court; but in form it calls for the
opinion of a witness as to what his conduct would have
been in an hypothetical case,— a form of question which
has been held improper very often.  *Woodworth v. Mills*,
61 Wis. 44, 54; *Commercial Bank v. Firemen's Ins. Co.* 87
Wis. 297, 303; *Hill v. American S. Co.* 107 Wis. 19, 29.

The last assignment of error, predicated upon alleged ex-

cessive award of damages, cannot be sustained, in the light of *Berg v. C., M. & St. P. R. Co.* 50 Wis. 419. In that case the permanent injury was quite similar to plaintiff's, but the earning capacity of Berg was less than one third of *Yerkes's.* The recovery in this case would purchase for the plaintiff an annuity of but little more than half of his yearly earnings at the time of his disablement. While the damages are large, we cannot say that they are beyond reason, or necessitate an inference of passion or prejudice.

The two errors in charging the jury above indicated render reversal unavoidable.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.