EGNOR, Appellant, vs. N. C. FOSTER LUMBER COMPANY,
Respondent.

*October 22—November 11, 1902.*

*Master and servant: Defective machine: Injury to servant: Special
verdict: Assumption of risk.*

1. In an action for injuries sustained by plaintiff while working
   at an edging machine in a sawmill, it was claimed that de-
   fendant was negligent in permitting the finger guards of the
   machine to become dull and worn so that they would not pre-
   vent lumber being thrown back when the saws were pinched
   or became heated. The jury found, in a special verdict, that
   defendant was not negligent in that regard, and left unan-
   swered a question as to whether, if they found defendant
   negligent, such negligence was the proximate cause of the
   injury. Under a misapprehension the court sent the jury back
   to answer that question, and they answered it in the affirma-

tive.  *Held*, that it was proper thereafter to correct the mis·
take by striking out such affirmative answer.
2. Upon the evidence—showing, among other things, that plaintiff
had worked at this machine for eight years and was familiar
with its operation and the condition of the fingers; that at
the time of the accident he had his hand on a plank and was
attempting to pull it through the edger; that this was a
dangerous act, not a part of his duty, and having a direct tend-
ency to cause the plank to pinch the saws and be driven forc-
ibly back; and that the plank was so driven back, and a sharp
piece sawed from it struck and injured the plaintiff,—it is
*held* that plaintiff had assumed the risk and could not recover.

APPEAL from a judgment of the circuit court for Eau
Claire county: JAMES O'NEILL, Circuit Judge.  *Affirmed.*

In March, 1900, defendant owned and operated a sawmill
in Eau Claire county.  Among other machines in use was a
double edger for edging lumber as it came from the saws.
Plaintiff had acted as a helper at this machine for about eight
years.  His station was on the left-hand side of the machine,
about opposite the center of the feed table.  His duty was to
assist in taking lumber from the rollers or skids and placing
it on the edger table.  There were two men, called the "edger
men," who stood at the front of the machine, and put the
lumber through.  McLyman operated the right-hand side,
and Norton the other side.  Each had a helper.  Plaintiff
was Norton's helper.  On March 20, 1899, he was engaged
at his regular work.  Norton was engaged in putting a piece
of lumber through the edger.  It was a two-inch plank, seven
or eight inches wide and twelve feet long.  It was a "sappy,"
"springy" plank.  Norton pushed as far as he could with his
hand.  It pinched the saws, and would not go forward.  Nor-
ton picked up a stick, and pushed on the end of the plank.
The plank was put in about ten inches from the side of the
edger, and a piece was being taken from each side.  Plaintiff
reached over, and put his hand on the end of the plank, at-
tempting to push it through.  In some way it pinched on the
saws.  Norton called to plaintiff to let it alone.  He saw that

it was caught. He dropped to the floor, and the piece was thrown back very quickly. As it came back a piece three or four feet long, sharp at one end, was cut from the plank, and was thrown so that it penetrated plaintiff's arm and made a severe wound.

The complaint describes the machine, and the negligence alleged was that it was maintained and operated without any appliances or safeguards to protect employees from the danger of lumber being thrown back, and also that the saws were not properly filed and set. The answer alleged that the machinery was of the make and style usually used in sawmills, and that the injury to plaintiff was caused by his own want of care.

On the trial it was shown that the machine was supplied with fingers or guards such as were in common use. Against defendant's objection, the plaintiff's testimony was directed to showing that these fingers had been allowed to become dull, so that they would not catch or hold lumber, or prevent its being thrown back when the saws became heated by the pinching of the lumber. No effort was made to show that the appliance was not proper, only that it was out of order. Much testimony on both sides bearing on the question was introduced; that of plaintiff tending to show that the fingers were dull and worn, and that of defendant tending to show that they were in proper condition, and that no device had yet been invented that would prevent lumber being thrown back under all circumstances.

The jury found a special verdict substantially as follows: (1) That the finger guards were in substantially like condition as to sharpness as on like machines in similar mills. (2) That defendant used as much care with respect to the points of the fingers as was usually exercised under similar circumstances by persons of ordinary care, engaged in the same kind of business. (3) That said finger device was not defective or out of repair. (4) That defendant exercised

ordinary care in keeping said finger device in the condition it was when plaintiff was injured. (5) Not answered. (6) The injury was not the result of an accident which neither party in the exercise of ordinary care could have foreseen. (7) Defendant ought not to have apprehended an injury to its employees. "Question No. 8. ·If you find defendant did not exercise ordinary care in keeping said finger device in the condition it was at the time plaintiff was injured, then was such want of ordinary care the proximate cause of plaintiff's injury? Answer. Yes."

The other questions and answers are not deemed important to the issue presented. The jury came in with the verdict without any answer to question No. 8. The court sent them back with directions to answer it. After the verdict had been received, the defendant moved to strike out the answer to question No. 8, and for judgment. The plaintiff moved for a new trial. The court denied plaintiff's motion, and granted defendant's; holding that plaintiff had assumed the risk, and that if there was any negligence it was that of a fellow-servant. Judgment was entered for defendant, from which plaintiff takes this appeal.

*L. A. Doolittle,* for the appellant.

*V. W. James,* for the respondent.

BARDEEN, J. The negligence alleged in the complaint was that defendant maintained and operated its edger without any safeguard or appliance to prevent lumber being thrown back, and that the saws were not properly filed and set. On the trial it was shown that the machine was supplied with a device in common use called "finger guards." Plaintiff then shifted his claim of negligence, and sought to show that the appliance so furnished was out of order, in that the finger guards were allowed to become dull. He abandoned entirely his claim that the saws were not properly sharpened or set. A vast amount of testimony was given as to the con-

dition of the fingers on this machine; that of plaintiff tending to show that if the fingers were not sharp they would not hold or prevent lumber being thrown back when the saws were pinched or became heated, that of defendant showing that the fingers were in the condition commonly kept in saw mills. The fingers on this machine were produced in court. Various experiments were tried, and after a long trial the jury brought in a verdict to the effect that defendant was guilty of no actionable negligence. Question No. 8 quoted in the statement was only to be answered in case the jury found the defendant did not use ordinary care. The jury returned into court with that question unanswered. By some strange misapprehension, the trial judge determined that this question must be answered, and directed the jury to return to their room and make answer to it. This they did, making the answer stated. When the court came to consider the defendant's motion to strike out such answer, he discovered his error and struck it out. If the trial was otherwise regular, this was the proper thing to have done. It was inconsistent with the answers to the other questions, and seems to have been made under a misapprehension as to the necessity therefor. The court was in error when he requested the jury to make it, in view of the answers to the other questions already made, which error he was able to correct on the defendant's motion.

Many objections are raised by plaintiff's counsel as to the regularity of the trial, but we find it unnecessary to consider them. The trial court, in deciding defendant's motion for judgment, found that as a matter of law the plaintiff assumed the risk, and that if there was any negligence it was that of a fellow-servant. The evidence showed that plaintiff had worked at this machine for about eight years. He was as familiar with the machine and its operation as any man in the mill. He had had occasion many times to raise the fingers to release a board that had started wrong. This was a matter

of almost daily occurrence. This was done by the use of a handle or lever at the side of the machine, near where plaintiff was stationed. His principal duty was to assist the edger man in lifting lumber from the skids to the edger bed. The accident which befell plaintiff was a peculiar one. It probably has no parallel in the history of sawmill accidents. The edger man was attempting to put through a "sappy" or "springy" piece of lumber twelve feet long, seven or eight inches wide, and two inches thick. It had wany edges, and pieces were being taken off from both sides. It entered the machine about ten inches from the side of the edger where plaintiff stood. The edger man pushed it in as far as he could with his hands, and saw that it pinched the saws. He took a stick and pushed it further, and saw the trouble increase. About that time plaintiff, who stood with his left side to the edger, reached over with his left hand, and attempted to pull the plank through. Realizing the danger, the edger man called for him to let go, and immediately dropped to the floor. The plank seemed to have raised on the heel of the saws, and was sent back with great force. As it was thrown back the plank seemed to have come in contact with the saws, and a piece sharp at one end and three or four feet long was sawed off. The sharp end struck plaintiff's arm, injuring it very seriously. After testifying that he did not think he had his hand on this particular plank, plaintiff testified as follows:

"I did not make a habit, while I was at work there, to put my hand over on plank and boards as they were going through along to the saws; only on two-by-fours, when they was on the straight edge, I had to hold them then,—that is all; I did not when they were not on the straight edge. This particular plank that was going through at that time was not on the straight edge, and *I had no occasion to put my hand over there on this particular plank.* The only time I would put my hand over there would be to hold a plank up against the straight edge when it was running next to the straight edge,

and *I had no occasion at any time to put my hand over on plank that were not running next the straight edge."*

He said further that if he pushed a plank crosswise it would twist the saw and cause difficulty. Norton, whose helper plaintiff was, testified: *"Egnor* had no duty there, or no business there, to have his hand on the end of .that board at the time of the accident." McLyman, who was the edger man on the other side of the machine, testified to the same effect, and that he had frequently instructed his own helper, in *Egnor's* presence, not to do such a thing. The evidence also showed that, a person placing his hand on a board in the position that plaintiff was, the tendency would be to pull the board toward him, and the result would be to heat or pinch the saw, and drive the board back. Indeed, this would seem to be perfectly evident to any person who has ever seen such a machine operate. A very slight change in the direction of the plank would have a tendency to pinch the saws, and cause the board to catch and raise on the back side of the saw. In such case an accident is liable to happen.

We have, then, the testimony of plaintiff and the two men who operated the machine, to the effect that it was not part of plaintiff's duty to put his hand on the plank in question. In face of this, the jury found, in answer to question No. 14, that it was his duty to extend his hand over the top of the machine as he did. There is no credible evidence in the record to support this finding. The expert evidence of other edger men, as to the practice in other mills, or as to what they deemed the plaintiff's duty was under the circumstances, does not support it. The question was what was plaintiff's duty in this particular mill and at this particular machine. His own testimony ought to set that question at rest. If he had no occasion or duty to put his hand on a plank not running next to the straight edge, then when he volunteered to do an act imminently dangerous, one having a direct tendency to produce the result which followed, he certainly as-

sumed the risk of such act. In other words, he brought upon himself the very injury of which he complains. Whether it be called assumption of the risk or contributory negligence, it matters not. The result is the same. He cannot hold the master liable for an act done outside his regular duty, especially where he must have known that the doing of the act had a tendency to produce the results that followed. His long service at the machine must have taught him the extreme danger of the act done. His frequent manipulation of the fingers must have informed him of their condition. The master had no superior knowledge of their condition. "There are certain correlative duties on the part of the employee to the master. Of these, one is the duty to be reasonably observant of the machinery he operates, and to report any defects he may discover therein to the employer." 1 Bailey, Pers. Inj. § 797. If it be conceded that the fingers were dull, they had become so by use under plaintiff's eyes. During the eight years of his work at the machine, it had been the practice to sharpen the fingers about the middle of the sawing season. It was the duty of plaintiff or the edger man to make report to the foreman or millwright if the machine became out of order. If they knew the fingers had become defective, and did not so report, they certainly assumed the risk of operating them in such condition. The following cases bear upon the questions involved, and are decisive against a recovery in this case: *Erdman v. Illinois Steel Co.* 95 Wis. 6, 69 N. W. 993; *Larson v. Knapp, Stout & Co. Company,* 98 Wis. 178, 73 N. W. 992; *Kerrigan v. C., M. & St. P. R. Co.* 104 Wis. 166, 80 N. W. 586.

*By the Court.*——Judgment is affirmed.